**Agnes LOVELL, Appellant,**

v.

**William John LOVELL, Appellee.**

No. 5851.

Supreme Court of Alaska.

May 14, 1982.

Agnes Lovell, pro se.

Linda M. Cerro, Anchorage, for appellee.

Before RABINOWITZ, C. J., BURKE, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Agnes Lovell appeals from the superior court's denial of her Civil Rule 60(b) motion for relief from the terms of a property

---

division in a divorce decree.[1]  We conclude that the superior court erred in denying the motion.

■ The paramount issue in appeals of this nature is whether the superior court abused its discretion in ruling upon the Civil Rule 60(b) motion.[2]  Only in the circumstance where we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling will an abuse of discretion be found.[3]  Here our examination of the record has convinced us that Agnes Lovell established that the superior court abused its discretion in denying the relief she sought.  Since the facts which appear in the record are determinative, they will be related in some detail.

Agnes Lovell, represented by counsel, initiated an action for divorce in 1978.  The parties, through their counsel and by their individual efforts, attempted to arrive at a support and property settlement.  Eventually negotiations broke off and Agnes' attorney was permitted to withdraw upon her consent.

Agnes left Alaska after filing her complaint for divorce and went to Michigan to live with one of her daughters and son-in-law.  While she was in Michigan, and not represented by counsel, the case was set for hearing and was "calendared before the Divorce Master subject to further motions for reassignment."[4]  Thereafter the matter was heard before the master.  Agnes Lovell did not appear at the hearing; only William Lovell gave testimony.  Based upon the master's recommendation and report the superior court entered a decree of divorce under which William was awarded the family home in Birchwood; Agnes received an award of $20,000 payable in monthly installments of $250 from April 1, 1980, until November 1, 1986.

The evidence at the hearing before the master showed the following: Agnes and William were married in Anchorage in 1954.  At the time of the hearing, William was 53 years old and Agnes 52 years of age.  The last of their six children was born in 1963.  William served in the Air Force until he retired and was currently employed as a civilian truck driver for the Air Force earning a gross pay of approximately $3,000 per month.  The marital estate consisted of the parties' home in Birchwood, which was worth approximately $38,500 in 1979, and other personal property valued at $1,500.

At the hearing, William was asked if Agnes "ever told you that she wants a substantial financial settlement out of the divorce?"  William responded "No, what she keeps saying is she wants a maintenance allowance."[5]  Later in the hearing William was asked:

> Q. Do you have any reason to think from your discussions with her that she would want any more than this or need any . . .
>
> A. No, that's—she has said that quite often.  She can manage on 250.00 a month and I can pay her off that way.  She has said this . . . . this is what she wants, to my knowledge.

---

1. In her motion for relief from the judgment Agnes Lovell sought deletion of that portion of the decree which provided for division of the parties' property.  Additionally, Agnes sought an adjudication of property rights, "including but not restricted to [her] right to maintenance."

2. *Allen v. Bussell*, 558 P.2d 496 (Alaska 1976); *Nordin Constr. Co. v. City of Nome*, 489 P.2d 455 (Alaska 1971).

3. *McCracken v. Davis*, 560 P.2d 771, 776 (Alaska 1977); *Alaska Placer Co. v. Lee*, 502 P.2d 128 (Alaska 1972).

4. Masters are provided for by Civil Rule 53.  A copy of the Trial Setting Conference Order was mailed to Agnes and received by her.

5. William was asked if he had any knowledge as to the state of Agnes' health at the time of the hearing.  He replied "None whatsoever.  Last couple phone calls she sounded happy, that's all I could say, I don't know."  William was further asked:

> Q. As of the last time you saw her did she have any health impediment that would make it impossible for her to work, to the best of your knowledge?
>
> A. Impossible to work, no, I don't think so.

Also of significance is that at the outset of the hearing the master noted that Agnes had filed no appearance or waiver, and that "[t]he court has received a telegram today from Mrs. Lovell stating she did not want the divorce to proceed. However, this matter was set on . . . for an uncontested hearing and I will proceed with it as a—as an uncontested action." At the conclusion of the hearing the master stated that Agnes

> submitted herself to the jurisdiction of the court by filing the complaint and the proceeding has taken place as an uncontested divorce because there was a trial setting order and there has not been any timely objection to that order except the telegram which we received today, and the court will not be able to regard that as a timely opposition and therefore this matter should proceed as a divorce.

Some six months after the superior court had adopted the master's recommendations and entered findings, conclusions of law, and a decree, Agnes filed a Civil Rule 60(b) motion for relief from the property and support aspects of the decree. The motion was denied and this appeal filed.[6]

Civil Rule 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise or excusable neglect; . . .

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . .

■ This court has recognized that Civil Rule 60(b) "should be liberally construed to enable courts to vacate judgments whenever such action is necessary to accomplish justice."[7] In this case we are persuaded that Agnes has demonstrated excusable neglect under clause (1) of Civil Rule 60(b).

In her telegram to Judge Moody, to which the master alluded at the default hearing, Agnes indicated that she did not desire the divorce proceedings to go forward and that her reason for her actions was that she had no money for air fare to return to Alaska. In an affidavit filed in conjunction with her Rule 60(b) motion, Agnes averred in part:

> I had been receiving Two Hundred Fifty Dollars ($250) a month maintenance from my husband and this was insufficient to support myself. I had no lawyer and felt I must go to Alaska to protect myself. I phoned my husband asking him to send me plane fare so I could go to the conference. He refused saying "I can't squeeze a nickel out of a dime."
>
> . . . .
>
> Until the last moment I believed and hoped he would send the fare. When I finally realized he was not going to do so, in desperation I sent a telegram to [Judge Moody].[8]

---

**6.** On March 3, 1981, the superior court, denying the Civil Rule 60(b) motion, awarded William $1,000 in attorney's fees, and costs in the amount of $31.64.

**7.** *O'Link v. O'Link*, 632 P.2d 225, 230 (Alaska 1981).

**8.** In her affidavit Agnes relates a second request to her husband for plane fare. "Again, I phoned my husband and asked him for plane fare to go to the trial." These requests for transportation funds were made by Agnes during the time she was not represented by counsel and after she received correspondence from William's former counsel. This correspondence stated in part:

> I am confused, however, as to why you would wish to come to Anchorage given the

substantial expense that would entail, if you do not wish to contest any of the financial arrangements of the divorce. . . . It would be far less expensive and time consuming if you could simply advise me of what monetary arrangements you desire, and we could attempt to resolve the matter without the necessity of having the trial. That would entail, however, your signing whatever papers we agreed upon.

Agnes further averred that William's lawyer in another letter stated:

> I simply wanted to let you know that you do not need to do anything in response to these papers, and unless you want more money from Mr. Lovell than what he has been sending, I wanted to repeat that there is no need for you to come to court. You will not have to sign anything.

In addition to offering the foregoing explanation as to why she failed to attend the hearing before the master, Agnes in her affidavit stated that she had received a proposed settlement agreement from her attorney in October of 1979. According to Agnes the proposed settlement would have provided her with $500 per month maintenance for 15 months and $450 monthly thereafter plus a promissory note for $20,000 payable in five years at 8% interest, secured by a second mortgage on the parties' home. Agnes objected to a proposed provision under which maintenance payments would be reduced to $250 per month if she did not file quarterly reports with her husband detailing her employment and mental health assistance status. Agnes viewed the latter provision as an invasion of her privacy and therefore rejected the proposed settlement. She then fired her attorney. Agnes concluded by stating in her affidavit that "[d]uring the entire period in which my husband and I had attorneys, I understood I would not only get maintenance but also my share of our property."

On the basis of the foregoing, we conclude the record discloses that Agnes' failure to appear at the hearing before the master or to otherwise contest the property disposition suggested by William at the hearing was not the result of her free, calculated, and deliberate choice.[9] In short, we hold that Agnes made out a showing of excusable neglect under clause (1) of Civil Rule 60(b) which entitled her to the relief she requested.

Agnes' telegram to the superior court on the day of the hearing was sufficient to trigger an inquiry on the master's part as to the reasons for her nonappearance, whether in fact she had a need for travel funds, and whether she had requested funds from William to return to Alaska for the hearing but was denied any travel funds. Further, we deem significant the fact that Agnes has had a long history of medical and psychological problems which were revealed to the master.[10]

Given this background, we have serious doubts concerning the fairness of the default proceeding which was held by the master. In view of the considerable evidence of Agnes' past history of mental instability, the self-defeating course of conduct she engaged in with respect to the divorce proceedings, and Agnes' inability to attend the hearing before the master, we think there are substantial questions concerning the fairness of the default proceeding. In our view, these factors also call into question the fairness of the underlying decree. In these circumstances basic justice requires that the default decree, as it relates to property and support, be set aside and that Agnes Lovell be given her day in court.[11]

REVERSED.

9. *See O'Link v. O'Link*, 632 P.2d 225, 229–230 (Alaska 1981).

10. In his brief William states in part:
   Mrs. Lovell's past medical history was not concealed from the court, rather the court was well informed of a *past* psychological history, it appearing prominently in the lower court's file.
   The superior court's file contains a letter from Dr. Wandal W. Winn, regarding Agnes' mental condition. His mental diagnosis reveals a patient who is suffering from a "major disorder of psychotic proportions" and whose judgment is "grossly impaired."

11. Upon remand the superior court should ensure that Agnes Lovell is represented by counsel. In this regard AS 09.55.200(a) provides:
   During the pendency of the action, the court may provide by order
   (1) that one spouse pay an amount of money as may be necessary to enable the other spouse to prosecute or defend the action[.]