Larry W. STINSON, Appellant,

v.

Russell and Judy HOLDER, Appellees.

No. S–8286.

Supreme Court of Alaska.

March 17, 2000.

Rehearing Denied April 28, 2000.

Fleur L. Roberts, Law Offices of Fleur L. Roberts, for Appellant.

Gary Foster, Law Office of Gary Foster, Fairbanks, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## *OPINION*

EASTAUGH, Justice.

### I. *INTRODUCTION*

Following a trial he did not attend, real estate agent Larry Stinson was found by the jury to have breached his fiduciary duty to buyers of a home and was held liable for damages. He moved under Alaska Civil Rule 60(b) for relief from the resulting judgment, making a prima facie showing that he had been incompetent at the time of trial. The superior court denied his motion without determining whether Stinson had been incompetent. We hold that it was an abuse of discretion not to make that determination, and therefore remand. If the superior court finds that Stinson was incompetent, he will be entitled to relief from judgment and to a new trial.

### II. *FACTS AND PROCEEDINGS*

Russell and Judy Holder purchased a home through Larry Stinson and his employer, ReMax of Fairbanks.[1] Concerned by

---

1. The Holders claimed that Stinson represented to them that he was their agent. In fact, he was employed by ReMax, which represented the sell-

cracked windows which appeared to be caused by settlement, they conditioned their purchase on a satisfactory engineer's report. Engineer Brian Borjesson inspected the house and reported that he foresaw no major future problems.

Within four months after the Holders took possession, cracks began to appear in the walls. The problem steadily worsened and the Holders filed suit against the sellers, the Eckerts. The Holders later amended their complaint to add claims against Stinson, Re-Max of Fairbanks, and the sellers' real estate agent, Randy Smith.

An attorney represented Stinson during the pleading and discovery phases of the case, but the court permitted the attorney to withdraw with Stinson's consent on March 6, 1997. A few days before the trial commenced on June 10, 1997, Stinson advised the court that he would not be present due to a "serious medical condition" and asked the court to play his videotaped deposition testimony in his absence. He was neither present nor represented at trial.

Judge Charles R. Pengilly presided over the jury trial of the Holders' claims. Midway through the trial, the court addressed Stinson's absence and decided to advise the jury that Stinson was absent because of health reasons and that it should not draw any inference from that fact. ReMax and the Eckerts then sought to impeach Stinson's preserved deposition testimony by proffering evidence of Stinson's current medical problems and alleged memory loss going back to when he gave the first of several depositions. The Holders' attorney objected, claiming the late notice made it impossible for him to effectively address Stinson's alleged memory problems. The court acknowledged that it was a close question, but disallowed testimony from Stinson's treating physicians at the Mayo Clinic and from Stinson's wife, Aviva Stinson. The court noted that its concern was for the parties before it and concluded that the Holders would be substantially prejudiced if they were unable to conduct discov-

ery. Stinson's videotaped deposition testimony was played for the jury.

The jury found that Stinson had failed to disclose relevant information to the Holders, causing them to suffer damages totaling $280,000. Based on its conclusion that Re-Max of Fairbanks was vicariously liable, the court entered judgment for the Holders against Stinson and ReMax jointly and severally. ReMax moved for judgment notwithstanding the verdict and for a new trial. Stinson, whose wife was by then acting for him under his power of attorney, joined in ReMax's motion after the briefing was complete. The superior court denied the motions.

Meanwhile, in a new superior court proceeding, Aviva Stinson petitioned in August 1997 for appointment of a conservator for Stinson; she alleged that he was unable to manage his property and affairs. She attached copies of Stinson's Mayo Clinic records to support her petition. The records noted that Stinson exhibited mental deficiencies in learning, memory, cognitive speed and flexibility, and confrontation naming, indicating an Alzheimer's type dementia. Following a hearing, Judge Ralph R. Beistline found that Stinson was "unable to manage property and financial affairs because of incapacity" and appointed two conservators, one of whom was Stinson's son, Dr. Lawrence William Stinson, Jr. Aviva Stinson notified Judge Pengilly of the conservatorship action and of the conservators' appointments.

In January 1998 Stinson, through his son, filed a Rule 60(b) motion for relief from the Holders' judgment against him. The motion papers claimed that relief was required because Stinson had been incompetent. Following briefing and the submission of affidavits and transcripts discussing Stinson's mental state, Judge Pengilly denied the motion. The court conducted no hearing to resolve possible fact disputes before denying the motion. We discuss the motion in more detail in Part III.A, below.

Stinson appeals.[2]

---

ers, and in a deposition Stinson denied that he was the Holders' agent.

**2.** Among the original defendants, only Stinson is a party to this appeal. Counsel for Stinson's conservator represents Stinson.

## III. *DISCUSSION*

Stinson argues that it was error to deny his Civil Rule 60(b) motion without conducting an evidentiary hearing. He also argues that reversal is required because the court committed other alleged errors: (1) failing to include the names of Brian Borjesson and Randy Smith on the special verdict form; (2) excluding evidence of his mental state when ReMax and the Eckerts sought to impeach his deposition testimony; and (3) failing to grant his motions for judgment notwithstanding the verdict and for a new trial.

### A. *The Motion for Civil Rule 60(b) Relief*

#### 1. *Stinson's alleged incompetency*

In January 1998 Stinson moved under Civil Rule 60(b) for relief from the judgment entered against him about six months before.[3] The motion papers quoted from Mayo Clinic records to support Dr. Stinson's allegation that his father suffered from dementia and was incapable of understanding the consequences of failing to attend the trial or to request a trial continuance. He also argued that Stinson's competence at the time of his depositions was in doubt. Dr. Stinson also informed the court that Stinson had been adjudicated incompetent in the conservatorship proceeding.

Stinson sought relief under Rule 60(b)(1), on the theory his incapacity caused mistake, inadvertence, surprise or excusable neglect; under Rule 60(b)(4), on the theory his incapacity resulted in entry of a void judgment; or under Rule 60(b)(6), on the theory other reasons justified relief from the judgment.

In opposition, the Holders argued that there was no cognizable evidence that Stinson was legally incompetent when the matter went to trial in June 1997. The Holders filed excerpts of sworn hearing and deposition testimony from a judgment debtor inquiry to support their contention that Stinson was not legally incompetent. Those transcripts, however, also included Dr. Stinson's and Aviva Stinson's testimony that Stinson was impaired before and around the time of the 1997 trial.

Dr. Stinson, a medical doctor, submitted his own affidavit with Stinson's reply memorandum. He stated in it that his father's memory problems began as early as 1993, recurred in 1994, and became "steadily progressive" in 1995. He also stated that Alzheimer's and dementia are not conditions that can be turned off and on but are chronic and progressive. He affied that his father's treating physician, Dr. Janice Onorato, a neurologist, would be available to testify at a hearing, and that he would be filing a sealed report from a neurologist within the week. The reply memorandum again noted the adjudication of incompetence entered in the conservatorship proceeding.

The superior court denied Stinson's motion without conducting an evidentiary hearing. A day after the denial order was distributed the court received the Holders' request for a hearing under Rule 77(e) and Stinson's request for a conference to schedule an evidentiary hearing under Rule 60(b). Because the court had already denied Stinson's motion, it stamped "moot" on the hearing requests.

Stinson argues on appeal that it was an abuse of discretion to deny him a hearing on his motion and to deny his motion.

 Rule 60(b) permits the court to grant relief from judgment under certain circumstances.[4] The rule "should be liberal-

---

**3.** Appellant's excerpt of record fails to include the motion for Rule 60(b) relief and the responsive court order. *See* Alaska R.App. P. 210(c)(2).

**4.** *See* Alaska R. Civ. P. 60(b), providing in relevant part:

 (b) *Mistakes—Inadvertence—Excusable Neglect—Newly Discovered Evidence—Fraud—Etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

 (1) mistake, inadvertence, surprise or excusable neglect;
 (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
 . . . .
 (4) the judgment is void;
 . . . .
 (6) any other reason justifying relief from the operation of the judgment.

ly construed to enable courts to vacate judgments whenever such action is necessary to accomplish justice."[5] But we will not disturb a trial court's denial of a Rule 60(b) motion except upon a showing of abuse of discretion.[6] To find an abuse of discretion, we must be left with the definite and firm conviction on the whole record that a mistake has been made.[7]

In *Lovell v. Lovell*[8] we held that the movant made a showing of excusable neglect under Rule 60(b)(1), entitling her to relief, because the record disclosed that her failure to appear at a divorce property division hearing was not the result of her "free, calculated, and deliberate choice."[9] We deemed significant the fact that she had a long history of medical and psychological problems which were known to the court.[10] Given her absence and her known problems, we had serious doubts concerning the fairness of the proceeding.[11] In that case, notice to the trial court that a problem had arisen was "sufficient to trigger an inquiry."[12] Her absence and psychological problems justified setting aside the judgment for excusable neglect.[13]

■ The motion papers here revealed a genuine dispute about Stinson's competence when he permitted his defense attorney to withdraw, chose not to attend the trial or present a defense, and failed to move for a continuance. These circumstances demonstrated the probable prejudice resulting from any incompetency, and therefore demonstrated the materiality of the dispute. Given the

evidence submitted with the motion, the opposition, and the reply, it was necessary to conduct an evidentiary hearing to allow testimony about Stinson's mental state and to find facts about his competence at relevant times. The superior court had discretion to decide whether to hear oral argument on Stinson's motion,[14] and it could well have decided that oral argument on the legal propositions presented was not necessary. But it was an abuse of discretion to deny the motion without hearing and determining the relevant facts. Stinson's conservator represented that he would present testimony and evidence that Stinson was incompetent at critical times in the litigation. Given Stinson's prima facie showing of incompetence, and the plausibility of his claim that his incapacity prejudiced him at trial, the court could not deny Stinson's Rule 60(b) motion without resolving these fact disputes.[15]

■ The failure to conduct a hearing or resolve fact disputes about a party's competence at trial does not inevitably require a reversal. Has the party shown that the failure to hold a hearing prejudiced him?[16]

■ We conclude that Stinson has demonstrated that his alleged incompetence could have affected the outcome of the trial or the entry of judgment in at least two ways.

First, if he was not competent, Stinson could not be deemed to have knowingly consented to his attorney's withdrawal shortly before trial, to have knowingly waived attending the trial or presenting evidence, or to

**5.** *O'Link v. O'Link,* 632 P.2d 225, 230 (Alaska 1981).

**6.** *See McCracken v. Davis,* 560 P.2d 771, 776 (Alaska 1977).

**7.** *See id.* (citing *Gravel v. Alaskan Village, Inc.,* 423 P.2d 273, 277 (Alaska 1967)).

**8.** 645 P.2d 151 (Alaska 1982).

**9.** *Id.* at 154 (citing *O'Link,* 632 P.2d at 229–30).

**10.** *See id.*

**11.** *See id.*

**12.** *Id.*

**13.** *See id.*

**14.** See Alaska R. Civ. P. 77(e)(4).

**15.** *Cf. McCracken,* 560 P.2d at 775 (concluding that party was not prejudiced when court denied hearing on motion to set aside judgment because court was "fully apprised of the issue before the court and the appellant's position was fully and fairly presented for the judge's consideration").

**16.** *See* Alaska R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *Cleary Diving Serv. v. Thomas, Head & Greisen,* 688 P.2d 940, 942 (Alaska 1984) ("A party on appeal who alleges that oral argument was improperly denied must show both that the denial was in error and that the error caused substantial prejudice.").

have knowingly permitted the trial to proceed without him. Counsel at trial could have called Stinson as a witness, perhaps to demonstrate his inability through his own testimony to rebut the evidence against him. Given the credibility issues at the heart of the Holders' claims against Stinson, such a demonstration might have led the jury to view the Holders' evidence more critically, and Stinson's position and his deposition testimony more favorably. Counsel might also have bolstered the mid-trial efforts of ReMax and the Eckerts to show that Stinson was incapacitated when he was deposed. Counsel might have sought a continuance to permit Stinson to attend the trial or to allow him to be examined medically.

Second, counsel might have objected to the special verdict form's failure to allow the jury to allocate fault to Randy Smith. Smith, Stinson's co-real estate agent at ReMax, settled with the Holders before trial. Under Alaska law in effect at the time of the Holders' lawsuit, it would have been appropriate to request an instruction requiring the jury to allocate fault among all parties, including parties who had settled.[17] The parties attending the trial discussed including Smith on the verdict form and the court agreed that Smith should be included. But ultimately Smith's name did not appear on the verdict form. Neither ReMax nor the Eckerts objected to this omission before the jury was instructed or dismissed. The omission prevented allocating any fault to Smith.

Stinson's liability for damages would have been reduced if the jury had allocated fault to Smith. The omission was therefore prejudicial. We must presume that if Stinson had not permitted his attorney to withdraw, he would have objected to the omission and avoided the resulting prejudice.

We conclude that if Stinson was incompetent at critical stages of the litigation, it potentially caused him to suffer prejudice that would justify setting aside the judgment against him. It is consequently necessary to remand to determine his mental state at relevant times, such as when he was deposed,

when he consented to his attorney's withdrawal, and when he decided not to attend the trial. If the superior court finds that Stinson was incompetent at any of these times, it must also determine whether that incompetence prejudiced him, and if so, the relief needed to remedy the prejudice. Depending on the nature of any prejudice, Stinson may be entitled to a new trial to relitigate some or all of the issues tried in June 1997.

### 2. The lawsuit against Borjesson

Because of the possibility the court on remand will not find that Stinson was incompetent, we next consider Stinson's other appellate arguments.

■ The engineer, Borjesson, was not a party at the time of trial. Two months after the jury returned its verdict against Stinson, the Holders filed a separate lawsuit against Borjesson for professional negligence, negligent misrepresentation, negligent infliction of emotional distress, and breach of contract. Stinson claims that the Holders' complaint against Borjesson was newly discovered evidence that required relief from the judgment under Rule 60(b)(2).

We reject Stinson's argument. Rule 60(b)(2) permits relief from judgment for "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." [18] Although the Holders' complaint may have been "newly discovered," it was not "evidence" of Borjesson's liability and did not establish his fault. The evidence relevant to Stinson's defense in the Holders' lawsuit was Borjesson's potential fault—not the fact of the Holders' lawsuit against Borjesson. Evidence of Borjesson's fault, if any, was available before the trial. Moreover, Stinson's counsel was on notice, long before trial, of the possibility that Borjesson had contributed to the loss. The Eckerts had filed a third-party complaint against Borjesson in September 1995; it asserted that Borjesson was negligent in fulfilling an alleged duty to the Holders. Stinson became a party around

---

**17.** *See* former AS 09.17.080(a)(2) (1996); *Benner v. Wichman*, 874 P.2d 949, 958 (Alaska 1994).

**18.** Alaska R. Civ. P. 60(b)(2).

the same time; he obtained counsel soon after the Eckerts filed their third-party complaint. Stinson's counsel therefore had many months before he withdrew in which to evaluate Borjesson's potential responsibility for the Holders' damages.

The superior court did not abuse its discretion in failing to grant relief to Stinson under Rule 60(b)(2).

### B. *Stinson's Claims of Trial and Post-judgment Error*

We must also consider Stinson's non-Rule 60(b) arguments.

#### 1. *Failure to include Borjesson and Smith on the verdict form*

■■■ As a type of jury instruction, a special verdict form is subject to the same standard of review as other jury instructions. The trial court's jury instructions generally involve questions of law which are subject to the independent judgment standard of review. Errors in jury instructions will not be grounds for reversal unless they caused prejudice. We review de novo the question whether there has been prejudicial error in jury instructions. The decision whether to include a particular instruction rests with the discretion of the trial court.[19]

Stinson argues that the superior court erred in refusing to allow the jury to apportion fault to Borjesson and Smith by omitting their names from the special verdict form. He first argues that he is entitled a credit reflecting Borjesson's share of the fault.[20] The Eckerts had proposed a verdict form apportioning fault to Borjesson and the Holders objected to it. The court rejected the Eckerts' request because Borjesson was not a party.

■■■ That ruling was not error. Borjesson was not a party at the 1997 trial; under the law then in effect, a jury could not allocate fault to a non-party.[21] Stinson, while he was represented by counsel, could have opposed Borjesson's summary judgment motion or filed a cross-claim that would have kept Borjesson in the lawsuit. And, as the Holders observe, Stinson might have had tactical reasons for failing to oppose Borjesson's dismissal. It is unimportant that Borjesson had previously been a party; because the claims against him had been dismissed, he was not a party when the case was tried. It would have been error to allow the jury to apportion damages based on Borjesson's alleged fault.

Our discussion of Stinson's claim of incompetence in Part III.A.1 makes it unnecessary to consider separately the omission of Smith's name from the special verdict form. If Stinson was competent to waive the assistance of counsel and to decide not to attend the trial, it would be necessary to conclude that by failing to object to the verdict form, he failed to preserve the issue of Smith's omission from the verdict form for appellate review.[22] If Stinson was incompetent, he could not have knowingly waived objection to Smith's omission from the verdict form, and Smith's omission establishes the prejudice necessary for Rule 60(b) relief.

#### 2. *Excluding evidence of incompetence*

Although Stinson did not attend the trial, ReMax and the Eckerts proffered evidence at trial that Stinson had been incompetent when his depositions were taken. The court rejected the evidence.

The issue of Stinson's incompetence at the time of trial makes it unnecessary for us to consider separately whether it was an abuse of discretion to exclude evidence about his incompetence when he was deposed.[23] If

---

**19.** *Coulson v. Marsh & McLennan, Inc.,* 973 P.2d 1142, 1150 n. 21 (Alaska 1999) (citations omitted).

**20.** *See* former AS 09.17.080 (1996) (providing for apportionment of damages amongst parties, including third-party defendants and persons released under former AS 09.16.040).

**21.** *See* former AS 09.17.080 (1996); *Benner,* 874 P.2d at 957–58.

**22.** *See* Alaska R. Civ. P. 51(a) (providing that no party may assign as error failure to give instruction unless party objects).

**23.** We review challenges to a trial court's decision to exclude evidence for abuse of discretion.

Stinson was incompetent at the time of trial, he will be entitled to relief from the judgment; if he was competent, his failure to make an offer of proof at trial prevents him from raising the issue on appeal.[24]

Stinson also argues that the superior court erred by failing to assess his competence during the trial. Given his absence at trial, Stinson argues that the court should have acted sua sponte to discharge its duty to protect the interests of incompetent persons incapable of protecting their own interests. Because we remand for a determination of Stinson's competency to dismiss his counsel and absent himself from the trial, we do not need to determine whether the superior court should have inquired into the issue at trial.

3. *Denial of motions for new trial and judgment notwithstanding the verdict*

■ Stinson argues that it was error to deny his motions for judgment notwithstanding the verdict and for a new trial. We review the denial of a motion for a directed verdict "to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable men could not differ in their judg-ment."[25] We review the denial of a motion for a new trial for abuse of discretion.[26]

■ Stinson's failure to move for a directed verdict would normally preclude him from arguing that it was error not to grant his motion for judgment notwithstanding the verdict.[27] And his failure to file a timely motion for new trial would normally prevent him from arguing on appeal that it was error to deny him a new trial.[28] If Stinson was competent at the time of trial, these procedural deficiencies dispose of these claims of error. If he was not competent, he will be entitled to relief under Rule 60(b) for other reasons.[29] We therefore need not reach the merits of these arguments.

## IV. CONCLUSION

We therefore REVERSE the denial of Stinson's Rule 60(b) motion and REMAND for further proceedings.

---

*Agostinho v. Fairbanks Clinic Partnership*, 821 P.2d 714, 716 n. 2 (Alaska 1991).

24. *See* Alaska R. Evid. 103(a)(2) (providing that error may not be predicated upon ruling which excludes evidence unless substantial right of party is affected and offer of proof was made). Here, even though ReMax and the Eckerts made an offer of proof to admit evidence of Stinson's incompetence to impeach his deposition testimony, Stinson made no such offer. In fact, Stinson made clear to the court that he desired that his deposition testimony be heard in his absence. If he was competent, his stated wish to the court contradicts this asserted error.

25. *Holiday Inns of Am., Inc. v. Peck*, 520 P.2d 87, 92 (Alaska 1974).

26. *See Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439, 445 (Alaska 1989).

27. *See* Alaska R. Civ. P. 50(b); *Metcalf v. Wilbur, Inc.*, 645 P.2d 163, 170 (Alaska 1982).

28. *See* Alaska R. Civ. P. 59(b) (providing that motion for new trial shall be served not later than ten days after date shown in clerk's certificate of distribution on judgment). Judgment was first distributed on July 11, 1997. Final judgment was distributed on September 2. Stinson did not join in ReMax's motion for a new trial until September 24. The court denied the motion September 29. The judgment was corrected on October 22 but Stinson did not refile his motion for a new trial within ten days of that date, either.

29. *See Lovell*, 645 P.2d at 154 (stating basic justice required that judgment be set aside and that party be given day in court when party absent during proceedings and had known psychological problems).