*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DWANE J. SYKES, | ) |
| | ) Supreme Court No. S-17339 |
| Appellant, | ) |
| | ) Superior Court No. 4FA-13-02831 CI |
| v. | ) |
| | ) O P I N I O N |
| JAY T. LAWLESS and JEANNIE L. ENGLISH, | ) |
| | ) No. 7487 – October 23, 2020 |
| | ) |
| Appellees. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas Blankenship, Judge.

Appearances: Valerie M. Therrien, Law Office of Valerie M. Therrien, PC, Fairbanks, for Appellant. Michael C. Kramer and Robert John, Kramer and Associates, Fairbanks, for Appellees.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices.

WINFREE, Justice.

## I. INTRODUCTION

A property owner installed a locked gate across an access easement on his property and provided keys to the neighboring easement holder. The neighbor sued, alleging the gate wrongfully interfered with his easement rights. After trial the superior court determined the parties' easement rights and ruled in the property owner's favor.

The neighbor appeals, arguing the superior court erred by not applying res judicata to bar the property owner's defenses; made clearly erroneous findings about the easement's scope; and abused its discretion by allowing the locked gate, in procedural rulings, and in its attorney's fees award. Seeing neither error nor abuse of discretion, we affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

#### 1.    Initial sale

In 1966 Charles and Gertrude Ward conveyed a 160-acre parcel of land northeast of Fairbanks to William Mattice. In 1969 Mattice agreed to sell to Dwane Sykes 120 acres of the 160-acre parcel. But Mattice refused to complete the conveyance upon learning "Sykes was buying other properties" because Mattice suspected Sykes was not purchasing the land for "a family home" as Sykes previously had represented. Sykes brought suit against Mattice in 1969 to compel conveyance.

Meanwhile Sykes sought a waiver of Fairbanks North Star Borough subdivision requirements to permit Mattice to partition his property and sell Sykes the 120-acre parcel. In 1971 the Borough approved the request on the condition that Sykes obtain an access easement between the property and Chena Hot Springs Road.

In 1972 Sykes purchased 40 acres of land from the State. That 40-acre parcel's northwest corner touched the southeast corner of the 120-acre parcel Sykes sought to purchase from Mattice. The 40-acre parcel was subject to a 60-foot-wide public access road to Chena Hot Springs Road.

In 1973 the Borough gave final approval waiving subdivision requirements for the Mattice sale to Sykes. In 1974 Mattice deeded the 120-acre parcel to Sykes, along with a deed of easement. The easement included two segments; the second is at issue in this litigation.

### 2. Wilks litigation and 1980 judgment

In 1978 Mattice conveyed to Michael Wilks 20 acres from his remaining 40-acre parcel; this 20-acre parcel included the second segment of Sykes's easement. Wilks brought suit against Sykes in 1979, seeking to terminate the easement. While the suit was pending, Wilks conveyed to Scott Dicks 5 acres of the 20-acre parcel; this 5-acre parcel included the disputed easement.

In 1980 the superior court granted summary judgment in favor of Sykes. Recognizing that the easement was "a valid and subsisting easement across [Wilks's] property," the court stated that Wilks's property was "a servient tenement and the easement is a benefit to a dominant tenement consisting of property owned by defendants Sykes; and the easement was granted to and runs to Dwane J. Sykes and Patricia Sykes, and their heirs, assigns, devisees and successors in interest, without restriction."

### 3. Current conflict

In 2002 Dicks conveyed his five-acre parcel to Jay Lawless. In January 2007 an attorney for Sykes's neighbors wrote to Sykes expressing concern that he was "making improvements and building roads on [his] property." The attorney reminded Sykes that the easement "ha[d] not been approved by the [Borough] platting board as an access road to any subdivision" and informed him that the easement could not "handle the increased traffic."

In August the attorney wrote again, this time on Lawless's behalf, explaining that "increasing vehicle use ha[d] overburdened [the] easement" over Lawless's property. The attorney notified Sykes that because Lawless's "rights to the quiet enjoyment of his property [were] being disturbed," he planned to install a gate and provide keys to Sykes and anyone to whom Sykes had "assigned a right to use the easement." The attorney also stated that Lawless would keep keys at his home for other "authorized users of the easement." Lawless mailed Sykes keys in September.

Sykes responded by letter a few weeks later, demanding that Lawless not install a gate. Lawless replied that the gate would not restrict the easement's scope, only the "unauthorized use of the easement."

## B.      Proceedings

Sykes filed suit against Lawless in October 2013, asserting that the locked gate violated the easement and the 1980 judgment. Sykes sought partial summary judgment in April 2014, asserting that the legal issues were governed by res judicata based on the 1980 judgment and that Lawless should be required to remove the gate.

Sykes filed a second partial summary judgment motion in July 2015 and requested oral argument. The superior court issued a partial summary judgment decision in March 2016 but later vacated the decision in light of Sykes's request for argument. Sykes filed two additional partial summary judgment motions in July 2017, again requesting oral argument; the court heard arguments in August. Sykes again requested oral argument in May 2018.

The superior court held a five-day trial in May. Sykes began by arguing for partial summary judgment. The court immediately denied summary judgment because there were remaining factual questions, and the case proceeded to trial.

The superior court first heard Sykes's testimony. He testified that when Mattice deeded the easement, the parties intended it for access to the 40-acre parcel Sykes had purchased from the State. During trial opposing counsel questioned the authenticity of Sykes's exhibits, leading the court to explain to Sykes that because another court previously found that he forged documents,[1] and because the Borough does not allow him to view documents "because they don't trust [him]," the court would give his testimony "no weight, unless there's something else to corroborate it."

---

[1]      *See generally Berkshires, L.L.C. v. Sykes*, 127 P.3d 1243 (Utah App. 2005).

Mattice then testified that Sykes said he was purchasing the property "to build a new home" for his family. Mattice stated his intent that the easement provide "[Sykes] and his family and, presumably, guests" access but that Mattice did not "intend for the general public to have a right of access on [the] easement" because he "didn't want that kind of traffic with kids and dogs and everybody running by [his] house." And Mattice testified that Sykes never mentioned using the easement other than to access the 120 acres that Mattice conveyed to Sykes. But Mattice indicated he did not remember a number of facts about events between 1969 and 1974.

Finally, the superior court heard testimony from Lawless. He testified that he was concerned about increased traffic on the easement and the "hazard" of having four-wheelers and snowmachines driving outside its boundaries. He stated that the easement use put his "house and property at risk" and that the gate was "necessary for the health and safety" of his family and "the integrity of [his] property."

The superior court made oral findings on the record. It reiterated that it would not grant Sykes's motion for partial summary judgment because factual questions remained about Mattice's and Sykes's intent when they created the easement. The court found Sykes was not credible and his statements "ha[d] little, if any, probative value."

The superior court determined the deed was ambiguous because it did not identify which parcels were included in the dominant estate. The court found that Sykes's 40-acre parcel was not part of the dominant estate because the only supporting evidence that the 40 acres were included was Sykes's own testimony. The court then addressed the easement's scope. It relied heavily on Mattice's "very clear" testimony that Sykes had represented that the "entire 120 acres" was a homestead "where his family could live." The court found a "prima facie case of fraud" as "[t]here was a misrepresentation of intention, made for fraudulent purpose, to induce . . . Mattice to enter into [the agreement]," and the court recognized the "well-known rule" that a litigant

"cannot use the courts to perpetrate a fraud." The court therefore determined that the "easement may only be used by the single owner of that 120-acre parcel."

The superior court also ordered that Sykes could no longer represent himself or appeal pro se in the Fourth Judicial District. Lawless then asked the court to rule on the legality of installing locked gates across the easement. He indicated he would like to maintain the current gate and install an additional gate on the east end of the easement. The court authorized both gates.

In late May Lawless filed proposed findings of fact and conclusions of law and sought enhanced attorney's fees; that same day Sykes's new counsel entered an appearance. The superior court ruled on the attorney's fees and entered judgment in June but did not distribute its orders.

In July Sykes requested an extension of time to oppose the fee request and proposed findings. The superior court denied Sykes's motion, noting: "The service of the entry of appearance and the motion and proposed findings delivery to the other party crossed in the mail." Sykes filed the motion 26 days past the deadline for objecting to the proposed findings[2] and 22 days past the deadline for opposing the motion for fees.[3] The court rejected Sykes's argument that an extension was warranted because his attorney had not been served, noting that under Alaska Civil Rule 5(b), "[s]ervice by mail is complete upon delivery"; Lawless therefore completed service in late May. The court also noted that Sykes should have provided the documents to his attorney after receiving them or his attorney should have found the documents on the online court docket.

---

[2]    *See* Alaska R. Civ. P. 78(b) (requiring parties objecting to proposed findings of fact to file and serve objections within five days of service).

[3]    *See* Alaska R. Civ. P. 77(c)(2) (requiring parties to file oppositions to motions within ten days of service, barring enumerated exceptions).

In December the superior court issued its written rulings. The court denied summary judgment, recognizing there were remaining questions of fact, including whether "the 40[-a]cre [p]arcel and 120[-a]cre [p]arcel are dominant estates of the easement" and "by whom, and to what extent, an easement crossing" Lawless's 5-acre parcel could be used. It also determined the action was not barred by res judicata because it addressed an ambiguity in the 1980 judgment, namely, which property was the dominant estate.

In the superior court's written findings of fact and conclusions of law, it found that when Sykes and Mattice negotiated in 1969 Sykes had expressed an intent to use the land "for his own personal homestead" and that it was reasonable for Mattice to believe Sykes's statement. But it found "Sykes intentionally misrepresented his intention to Mattice," and thus "[t]he easement was obtained fraudulently." The court also found the deed of easement was ambiguous and did not reference the 40-acre parcel, and "no credible evidence" demonstrated that Sykes and Mattice mutually intended the easement "to include access to any lot within the 40 acres." With respect to credibility, the court found Mattice credible, noting he "is not a party and ha[d] not been involved with the property for many years." On the other hand, it found Sykes not credible based on his history of forging and altering documents. The court therefore found that it could rely on Sykes's statements only "if they [were] corroborated by other evidence."

The superior court then moved to its conclusions of law. It found by clear and convincing evidence that "Sykes intentionally misrepresented his intentions to Mattice concerning the use of the property at the time of purchase" and that "Mattice would not have sold the property to Sykes if Sykes [had] been truthful about his intentions." The court determined: "[T]he easement is appurtenant only to the 120[-a]cre [p]arcel. The scope of use of the easement described in the [d]eed of [e]asement

is for one single family dwelling located on the 120[-a]cre [p]arcel. And such easement is not appurtenant to the 40[-a]cre [p]arcel."

The superior court granted Lawless enhanced attorney's fees, increasing the award from 30% to 75%. The court noted that the "litigation was not inherently complex" but that Sykes made it unnecessarily complex. The court found that Sykes had used "bad faith litigation tactics" and that he "attempt[ed] to use the court as a vehicle to perpetrate his prior misrepresentation." It noted Sykes had committed fraud and likely introduced altered documents into evidence during the trial. Sykes had also filed "repetitive motions" that the court described as "convoluted and difficult to read." The court entered final judgment awarding Lawless slightly over $53,000.

Sykes appeals.

## III. DISCUSSION

### A. This Litigation Is Not Barred By Res Judicata.

Sykes asserts that "res judicata bars Lawless from re-litigating the 1974 [d]eed of [e]asement in front of a different court over 38 years after judgment in 1980 was rendered regarding the same easement." "Whether res judicata applies is a question of law that we review de novo."[4] We also "review de novo whether the elements of [issue preclusion] are met."[5]

#### 1. Claim preclusion

The doctrine of res judicata, or claim preclusion, "provides that a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute

---

[4] *Patterson v. Infinity Ins. Co.*, 303 P.3d 493, 497 (Alaska 2013) (quoting *Smith v. CSK Auto, Inc.*, 132 P.3d 818, 820 (Alaska 2006)).

[5] *Allstate Ins. Co. v. Kenick*, 435 P.3d 938, 944 (Alaska 2019) (alteration in original) (quoting *Lane v. Ballot*, 330 P.3d 338, 341 (Alaska 2014)).

between the same parties (or their privies) about the same cause of action."[6] The superior court found the first two elements were met; the 1980 judgment was a "final judgment on the merits" rendered by "a court of competent jurisdiction," but Sykes could not satisfy the third element because this litigation involved a different cause of action and was not between the same parties or their privies. Sykes argues the court erred in reaching that determination.

The third element — that a dispute be "between the same parties (or their privies) about the same cause of action"[7] — covers both "claims that were raised in the initial proceeding . . . [and] those relevant claims that could have been raised."[8] We have recognized:

> The claims extinguished by the first judgment include "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction . . . out of which the action arose," [and] a mere change in the legal theory asserted as a ground for recovery will not avoid the preclusive effect of the judgment.[9]

And we have relied on the Restatement (Second) of Judgments in holding: "A final judgment extinguishes all claims 'with respect to all or any part of the transaction, or series of connected transactions' out of which the previous action arose."[10] The "factual

---

[6] *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997).

[7] *Id.*

[8] *Calhoun v. Greening*, 636 P.2d 69, 72 (Alaska 1981).

[9] *DeNardo v. State*, 740 P.2d 453, 456 (Alaska 1987) (citation omitted) (quoting *State v. Smith*, 720 P.2d 40, 41 (Alaska 1986)); *accord Donnelly v. Eklutna, Inc.*, 973 P.2d 87, 91 (Alaska 1999).

[10] *Tolstrup v. Miller*, 726 P.2d 1304, 1306 (Alaska 1986) (quoting
(continued...)

grouping [that] constitutes a 'transaction' is determined by 'whether the facts are related in time, space, origin, or motivation,' and 'whether they form a convenient trial unit.' "[11] But claim preclusion "does not act as a bar when the conduct giving rise to the second suit occurs after the conclusion of the first suit."[12]

We also have cited the Restatement (Second) of Judgments in discussing the effect of judgments on successors to real property, stating: "A judgment in an action that determines interest in real or personal property . . . [h]as preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself."[13] A Comment to that Restatement indicates: "[T]he judgment precludes relitigation not only of claims concerning the property that were actually litigated but also claims that might have been litigated."[14]

Lawless is a successor in interest to Wilks and therefore is bound by the 1980 judgment. But claim preclusion does not bar Lawless from defending against Sykes's claims. Wilks sought only to terminate the easement; the superior court determined the easement was valid. But the judgment was ambiguous regarding whether the dominant estate included the separate 40-acre parcel Sykes had purchased from the State and did not address the specific scope of the easement. And the conduct giving rise

---

[10]     (...continued)
RESTATEMENT (SECOND) OF JUDGMENTS § 24 (AM. LAW INST. 1982)).

[11]     *Plumber*, 936 P.2d at 167 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (AM. LAW INST. 1982)).

[12]     *Id.*

[13]     *Donnelly*, 973 P.2d at 92 n.24 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 43 (AM. LAW INST. 1982)).

[14]     RESTATEMENT (SECOND) OF JUDGMENTS § 43 cmt. b (AM. LAW INST. 1982).

to this suit — increased traffic on the easement and Lawless's installation of a gate — occurred after the 1980 judgment.[15]  Lawless's defenses therefore could not have been brought in the initial litigation and are not barred by claim preclusion.

## 2.	Issue preclusion

The superior court also analyzed Sykes's argument under the doctrine of collateral estoppel, or issue preclusion.  Sykes briefly mentions this doctrine on appeal. Issue preclusion "bars the relitigation of issues actually determined in [earlier] proceedings"[16] and requires four elements:

> (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved by the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.[17]

The court determined issue preclusion did not apply because "[i]dentification of the dominant estate [was] not an issue that ha[d] been litigated."  The court was correct:  Issue preclusion requires that "the issue precluded . . . is identical to the issue decided in the first action."[18]  And the relevant issues in this case — which parcels were included in the dominant estate, the easement's scope, and whether Lawless may install

---

[15]	*See Plumber*, 936 P.2d at 167.

[16]	*Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011) (alteration in original) (quoting *Jeffries v. Glacier State Tel. Co.*, 604 P.2d 4, 8 n.11 (Alaska 1979)).

[17]	*Id.* (quoting *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1110 (Alaska 2002)).

[18]	*Id.* (quoting *Midgett*, 53 P.3d at 1110).

gates — were not resolved in the Wilks litigation. Lawless's defenses to Sykes's claims therefore are not barred by issue preclusion.

**B.    The Superior Court Did Not Clearly Err By Finding That Only The 120-Acre Parcel Was The Dominant Estate And The Easement's Scope Was For A Single-Family Home.**

"The touchstone of deed interpretation is the intent of the parties and where possible the intention of the parties will be given effect."[19]  Courts must apply a three-step approach in interpreting deeds.[20]  The first step "is to look at the four corners of the document to see if it unambiguously presents the parties' intent."[21]  "Whether a deed . . . is ambiguous is a question of law that we review de novo."[22]  "If the deed is open to only one reasonable interpretation, our analysis ends there."[23]

"[I]f the document is ambiguous, the court considers extrinsic evidence of the surrounding facts and circumstances."[24]  In this second step, the "inquiry can be broad, looking at 'all of the facts and circumstances of the transaction in which the deed was executed, in connection with the conduct of the parties after its execution.' "[25]  "We review the superior court's findings regarding the parties' intent after examining

---

[19]    *HP Ltd. P'ship v. Kenai River Airpark, LLC*, 270 P.3d 719, 727 (Alaska 2012) (quoting *Estate of Smith v. Spinelli*, 216 P.3d 524, 529 (Alaska 2009)).

[20]    *Id.*

[21]    *McCarey v. Kaylor*, 301 P.3d 559, 563 (Alaska 2013) (quoting *Spinelli*, 216 P.3d at 529).

[22]    *Reeves v. Godspeed Props., LLC*, 426 P.3d 845, 849 (Alaska 2018).

[23]    *Offshore Sys.-Kenai v. State, Dep't of Transp. & Pub. Facilities*, 282 P.3d 348, 354 (Alaska 2012).

[24]    *HP Ltd. P'ship*, 270 P.3d at 727.

[25]    *Id.* (quoting *Spinelli*, 216 P.3d at 529).

extrinsic evidence for clear error."[26] Clear error "occurs when a review of the entire record leaves us with a definite and firm conviction that a mistake has been made."[27] Finally, "[i]f no intent can be ascertained after examining both the document itself and the extrinsic evidence," a court will reach the third step, which requires "resort[ing] to rules of construction."[28]

The superior court concluded that the 1974 deed of easement was ambiguous. We agree; the deed addressed neither the 40-acre parcel Sykes had purchased from the State nor the easement's specific scope.

The superior court then looked to "extrinsic evidence of the surrounding facts and circumstances."[29] The court found Mattice's testimony credible and Sykes's testimony not credible. It thus relied heavily on Mattice's trial testimony in finding that Sykes's "easement was obtained fraudulently" because Sykes "expressed that his only intent was to use the 120 acres for his own personal homestead." Based on these findings, the court ultimately determined that "[t]he easement is appurtenant only to the 120[-a]cre [p]arcel for the purposes of providing access to a single family residence" and that the parties' intent was for the easement to not include access to the 40-acre parcel or allow a scope of use outside a single-family home.

The superior court did not clearly err in its factual findings. It relied on Mattice's testimony, which it found credible, and "[w]e give deference to the superior court's credibility assessments, especially when such assessments are based on oral

---

[26]     *Id.*

[27]     *Offshore Sys.-Kenai*, 282 P.3d at 354.

[28]     *HP Ltd. P'ship*, 270 P.3d at 727.

[29]     *See id.*

testimony."[30] We therefore affirm the court's decisions identifying the dominant estate and the easement's scope.

## C. The Superior Court Did Not Abuse Its Discretion By Determining Lawless Could Install Locked Gates.

Sykes argues the superior court erred by ruling that Lawless could install and maintain two locked gates over the easement. Sykes asserts that the gates are an "unreasonable interference" on his use of his property and "provide[] no security for any property owned by Lawless" but instead merely "inconvenience Sykes." Alternatively, Sykes claims "[t]he record is insufficient to determine whether Lawless'[s] justifications to the locked gate[s] outweigh the inconvenience suffered by Sykes." Sykes also asserts that the court's decision allowing the gates would prejudice him in a future claim for termination of the easement by prescription.

In *Williams v. Fagnani* we addressed a locked gate installed on an easement.[31] We quoted the Restatement (Third) of Property in noting that "the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude."[32] We further explained that in deciding whether there is unreasonable interference, "the interests of the parties must be balanced to strike a reasonable accommodation that maximizes overall utility to the extent consistent with effectuating the purpose of the easement."[33] With respect to gates,

---

[30] *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 949 (Alaska 2013).

[31] 228 P.3d 71 (Alaska 2010).

[32] *Id.* at 74 (quoting RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9 (AM. LAW INST. 2000)).

[33] *Id.* (quoting RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9 cmt. c (continued...)

we noted that courts generally "hold that a locked gate constitutes an unreasonable interference with the use of the easement, even though the dominant owner is furnished a key" but that "courts have permitted locked gates when such gates were necessary for the servient owner to make reasonable use of the servient land."[34] Noting that "courts have recognized that gates, especially locked gates, amount to a significant burden on a rural homeowner's right of access" we concluded that "gates must serve a substantial benefit to the servient land if they are to be maintained across a roadway to a home"; examples of benefits justifying gates included enclosing livestock, protecting valuable property, and protecting personal safety.[35]

We must decide whether the superior court abused its discretion by determining Lawless could install two locked gates.[36] And we hold that it did not. Lawless cannot be said to have "unreasonably interfered with exercise of an easement"[37] by erecting a gate that interferes with activities outside the easement's scope. The burden on Sykes's personal use is minimal, as he does not have a single-family residence

---

[33] (...continued)
(AM. LAW INST. 2000)).

[34] *Id.* at 75 (quoting JAMES W. ELY, JR. & JON W. BRUCE, THE LAW OF EASEMENTS & LICENSES IN LAND § 8:28 (2009)).

[35] *Id.*

[36] *Cf. Green v. Parks*, 338 P.3d 312, 315 (Alaska 2014) (applying abuse of discretion standard in reviewing superior court's balancing decision); *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 360 (Alaska 2001) (same); *Ross v. Ross*, 496 P.2d 662, 664 (Alaska 1972) (same).

[37] *See Williams*, 228 P.3d at 74 (quoting RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9 cmt. c (AM. LAW INST. 2000)).

on the property. And the benefit for Lawless is substantial, as it protects his property from trespassers and traffic outside the easement's scope.

Sykes's argument that the gates subject him to a potential future claim of termination of the easement by prescription is unconvincing. "An easement is terminated by prescription if the party claiming prescription can 'prove continuous and open and notorious use of the easement area for a ten-year period by clear and convincing evidence.' "[38] The period begins when "use of the easement 'unreasonably interfere[s]' with the current or prospective use of the easement by the easement holder."[39] The gates are not an "unreasonable interference" because they were approved by the court; the gates therefore could not be evidence in a future claim that the easement was extinguished by prescription.

## D. The Superior Court Did Not Substantially Prejudice Sykes By Holding Oral Argument On Summary Judgment The Same Day As Trial.

Under Alaska Civil Rule 77(e) the superior court must hold oral argument on motions for summary judgment when requested.[40] The argument must be held "no more than 45 days from the date the request is filed or the motion is ripe for decision, whichever is later."[41] But even if the court's scheduling were contrary to Rule 77(e)(3),

---

[38] *Reeves v. Godspeed Props., LLC*, 426 P.3d 845, 851 (Alaska 2018) (quoting *Hansen v. Davis*, 220 P.3d 911, 916 (Alaska 2009)).

[39] *Hansen*, 220 P.3d at 916 (alteration in original) (quoting RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.9 (AM. LAW INST. 2000)).

[40] Alaska R. Civ. P. 77(e)(1)-(2).

[41] Alaska R. Civ. P. 77(e)(3).

Sykes must "not only show error, but as a second step 'substantial prejudice' must also be demonstrated."[42]

Sykes asserts that the superior court's decision to allow him to argue his summary judgment motions on the first day of trial "substantially prejudiced [his] ability to fully and fairly present his case" at trial. But Sykes argued his motions before the court in August 2017; and even had the May 2018 trial been his only opportunity, he provides no indication of specific prejudice affecting the outcome of this case. Even if it were error for the court to delay oral argument on summary judgment until the first day of trial, we see nothing to suggest this delay substantially prejudiced Sykes.

### E.     The Superior Court Did Not Abuse Its Discretion By Denying Sykes's Motion For An Extension Of Time For Post-Trial Motions.

Sykes also appeals the superior court's denial of his motion for extension of time to object to the proposed findings and to oppose the attorney's fees motion. As discussed above, the superior court denied Sykes's motion, which was filed over 20 days past the deadline.[43] "We apply the abuse of discretion standard when reviewing superior courts' rulings on motions for extension of time."[44] "We will find an abuse of discretion when the decision on review is manifestly unreasonable."[45]

---

[42]     *See McCracken v. Davis*, 560 P.2d 771, 774 (Alaska 1977) (quoting *Sloan v. Atl. Richfield Co.*, 541 P.2d 717, 722 (Alaska 1975)); *see also Bennett v. Hedglin*, 995 P.2d 668, 674 (Alaska 2000) ("A party on appeal who alleges that oral argument was improperly denied must show both that the denial was in error and that the error caused substantial prejudice." (quoting *Cleary Diving Serv., Inc. v. Thomas, Head & Greisen*, 688 P.2d 940, 942 (Alaska 1984))).

[43]     *See* Alaska R. Civ. P. 77(c)(2), 78(b).

[44]     *Erica G. v. Taylor Taxi, Inc.*, 357 P.3d 783, 786 (Alaska 2015).

[45]     *Id.* at 786-87 (quoting *Ranes & Shine, LLC v. MacDonald Miller Alaska,*
(continued...)

A request for enlargement of time must be made before the filing deadline unless "the failure to act was the result of excusable neglect."[46] To prove excusable neglect, "a party must show both neglect and a valid excuse for that neglect."[47] Sykes argues that his failure to meet the deadline was "the result of excusable neglect" because his attorney "was waiting for the court's distribution of a judgment triggering the time to file a motion and opposition to fees" and because "Lawless had an obligation to serve [Sykes's attorney] a copy of his motion once he received her entry of appearance, but failed to do so."

The superior court correctly determined that Lawless was not required to serve Sykes's newly appearing attorney because he already had completed service to Sykes under Alaska Civil Rule 5(b). And the two "excuses" Sykes provided are unconvincing. First, Sykes's attorney claimed that Sykes did not advise her of the motions because he was traveling abroad. As the court noted, this excuse was "insufficiently supported for the court to conclude that he was not able to communicate"; further, "it is not unreasonable to require a litigant to make some arrangements for monitoring litigation mail." The second excuse was that Sykes's attorney "did not see the motion" on the court's online system despite checking it "occasionally." This excuse is unconvincing because the attorney's fees motion and proposed findings were listed in the online docket more than a month before Sykes's motion for an extension of time was filed. The court therefore did not abuse its discretion by denying the motion.

---

**45** (...continued)
*Inc.*, 355 P.3d 503, 508 (Alaska 2015)).

**46** Alaska R. Civ. P. 6(b).

**47** *Erica G.*, 357 P.3d at 787 (quoting *Coppe v. Bleicher*, No. S-13631, 2011 WL 832807, at *5 (Alaska Mar. 9, 2011)).

**F.    The Superior Court Did Not Abuse Its Discretion By Awarding Enhanced Attorney's Fees.**

"We review an award of attorney's fees under Alaska Civil Rule 82, including an award of enhanced attorney's fees, for abuse of discretion."[48]  We "find an abuse of discretion [only] if an award is 'arbitrary, capricious, manifestly unreasonable, or the result of an improper motive.' "[49]  "But because an enhanced fee award under Rule 82(b)(3)(G) 'calls into question [a party's] litigation conduct and the potential merits of [the party's] underlying . . . motions, we assess de novo the legal and factual viability of [the party's] motions and review relevant findings of fact for clear error.' "[50]

Rule 82 allows a court to "vary an attorney's fee award" based on "the complexity of the litigation" and "vexatious or bad faith conduct."[51]  As discussed above, the superior court granted Lawless enhanced attorney's fees, increasing the presumptive award from 30% to 75%.  The court noted that Sykes had "added unnecessary levels of complexity," used "bad faith litigation tactics," and "filed multiple repetitive motions," many of which "were convoluted and difficult to read."

Sykes argues that the superior court erred by awarding enhanced attorney's fees.  He asserts that the court and Lawless made the litigation more complex, noting the multiple requests for time extensions Lawless filed.  Sykes also argues that he did not act in bad faith; he claims that the court can consider the party's conduct only during litigation to determine whether there was bad faith and that the court thus erred by

---

[48]    *Herring v. Herring*, 373 P.3d 521, 528 (Alaska 2016).

[49]    *Keenan v. Meyer*, 424 P.3d 351, 356 (Alaska 2018) (quoting *Johnson v. Johnson*, 239 P.3d 393, 399 (Alaska 2010)).

[50]    *Herring*, 373 P.3d at 528 (first and second alterations in original) (quoting *Johnson*, 239 P.3d at 399).

[51]    Alaska R. Civ. P. 82(b)(3)(A), (G).

considering his conduct in the transaction with Mattice. Sykes finally argues that the court improperly granted enhanced attorney's fees "as a substitute for punitive damages."

The superior court did not abuse its discretion by granting enhanced attorney's fees. As discussed above, the court did not clearly err by finding that Sykes committed fraud with respect to the easement's scope. Sykes is correct that an enhancement must rely on "bad faith conduct . . . [that] occurr[ed] during the litigation, not during the underlying transaction that is the subject of the litigation."[52] But the court did not rely on Sykes's fraud in the underlying transaction as justification for finding bad faith; it instead relied on Sykes's "attempt to use the court as a vehicle to perpetrate his prior misrepresentation." It was not error for the court to conclude that bringing litigation "to expand the scope of a fraudulently obtained easement" was itself bad faith conduct. It also was not error for the court to determine that filing numerous "convoluted and difficult to read" motions made the litigation unnecessarily complex. There is no indication that the court granted enhanced attorney's fees as a substitute for punitive damages; the court explained the reasons it granted enhanced attorney's fees. These reasons did not include any separate punitive purposes, "and we will not infer such an intent when the [enhanced] fee award was itself well supported."[53] We therefore affirm the enhanced fee award.

### G.    Sykes's New Allegations Of Incapacity Are Waived.

Sykes argues that the judgment is void because of his alleged mental incapacity during trial. He asserts that "the court should have examined [his] competency to represent himself and appoint[ed] a guardian if necessary." But that

---

[52]    *Keenan*, 424 P.3d at 361 (alterations in original) (quoting *Cole v. Bartels*, 4 P.3d 956, 961 n.24 (Alaska 2000)).

[53]    *See id.* at 363.

argument is not properly before us. Sykes did not ask for a guardian ad litem before the superior court, and the court never made an adjudication regarding his competency. Lawless once requested in a filing that Sykes be appointed a guardian, but Sykes failed to respond to the issue. Sykes was required to first raise this argument in a Rule 60(b) motion before the superior court;[54] he may not raise it for the first time on appeal.[55] This argument is therefore waived.

## IV. CONCLUSION

We AFFIRM the superior court's decision.

---

[54] *Cf. Stinson v. Holder*, 996 P.2d 1238, 1240-43 (Alaska 2000) (reviewing superior court's denial of Rule 60(b) motion arguing party's incompetence).

[55] *See Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019) (noting that "[a]rguments raised for the first time on appeal are generally waived"); *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 355 (Alaska 2001) ("As a general rule, we will not consider arguments for the first time on appeal.").