**Therese U. DONNELLY, Timothy Donnelly, Deborah Donnelly, William Donnelly, and Kevin Donnelly, Appellants,**

v.

**EKLUTNA, INC., Appellee.**

No. S–7808.

Supreme Court of Alaska.

Feb. 5, 1999.

---

Lawrence A. Pederson, Paul J. Nangle & Associates, Anchorage, for Appellants.

James S. Crane & Robert H. Hume, Jr., Copeland, Landye, Bennett and Wolf, LLP, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

Eklutna, Inc., and the Donnellys both claim to own the same 92.5 acres near Eagle River. Eklutna sued the Donnellys, seeking ejectment, quiet title, and declaratory relief. The superior court entered summary judgment against the Donnellys, who now appeal. Because we conclude that the claims of the Donnelly family are barred by res judicata, we affirm.

## I. FACTS AND PROCEEDINGS

In 1957 Joseph Donnelly, his wife Therese, and their children attempted to homestead 160 acres near Eagle River. Sometime in 1957 or 1958, the Bureau of Land Management (BLM) notified Mr. Donnelly that the land was closed to entry and rejected his homestead application. For a while, Mr. Donnelly pursued his application through the administrative process, but by 1959 he abandoned these efforts.[1] Eventually, through a compromise proposed by BLM, Mr. Donnelly was able to secure a patent for 67.5 acres of his claim that lay outside the area closed to entry.

In 1970 the United States served Mr. Donnelly with a notice of trespass with respect to the remaining 92.5 acres in dispute. Mr. Donnelly apparently chose to ignore the notice, and he built a house on the disputed land. The Donnelly family has not lived in the house since the mid–1980s. Sometime in the early 1990s the house was torn down.

### A. Federal Litigation

Meanwhile, Congress had passed the Alaska Native Claims Settlement Act (ANCSA);[2] in 1974 Eklutna, an Alaska native corporation, selected the disputed land under ANCSA. In 1975 the United States commenced a trespass action against Mr. Donnelly in federal district court.[3] Mr. Donnelly counterclaimed, arguing that the federal government's wrongful withdrawal of the lands from entry precluded him from successfully homesteading and that he in fact possessed equitable title to the homestead.[4] In 1979 the United States patented title to the surface estate in the land in Eklutna. The district court thereafter dismissed the United States as a party, and Eklutna intervened to replace it. Mr. Donnelly then asserted a number of counterclaims against Eklutna rooted in ANCSA and common law. Midway through the litigation, Mr. Donnelly died, and Therese Donnelly, as a personal representative of his estate, was substituted for him.[5]

After a bench trial, the district court dismissed Mr. Donnelly's counterclaims against the United States and Eklutna and entered summary judgment for Eklutna. On appeal, the United States Court of Appeals for the Ninth Circuit affirmed.

The Ninth Circuit noted that the federal Quiet Title Act provided the exclusive remedy for resolving title disputes with the United States.[6] The court concluded that the Act's twelve-year statute of limitations, which governed Mr. Donnelly's quiet title claims, had expired by 1973, two years before he raised them as counterclaims.[7] Because the statute of limitations had run, the court concluded that it "lack[ed] jurisdiction" to consider Mr. Donnelly's quiet title claims against the United States.[8] And because Mr. Donnelly could no longer join the United States—an indispensable party—in the quiet title claims that he had asserted against Eklutna, the court went on to dismiss these claims as well. It explained:

> In order to challenge the validity of Eklutna's patents, [Mr. Donnelly] must establish [his] own entitlement to the lands ... [He] can only properly [do so] in direct proceedings against the United States.... It follows from the fact that the United States is an indispensable party to this action that the district court's lack of jurisdiction as to the claims against the United States requires the dismissal of the claims against the Native corporations.[9]

Apart from his homestead claim, Mr. Donnelly had asserted in the district court action that as an occupant on the disputed land, he had a right to title under ANCSA section

---

1. See Donnelly v. United States, 850 F.2d 1313, 1319 (9th Cir.1988).

2. 43 U.S.C.A. §§ 1601—1629f (1986 & Supp. 1998).

3. See Donnelly, 850 F.2d at 1316.

4. See id. at 1316, 1321.

5. See id. at 1315 n. 1.

6. See id. at 1317.

7. See id. at 1318–20.

8. Id.

9. Id. at 1320 (citation omitted).

14(c)(1).[10] The district court had found that Mr. Donnelly was a trespasser, and as such, he could not be an occupant within the meaning of that section.[11] On appeal, Mr. Donnelly argued that he could not be a trespasser, since he possessed equitable title to the land as a homesteader.[12] The Ninth Circuit rejected Mr. Donnelly's claim under section 14(c)(1) without addressing his equitable title argument, concluding that a homesteader's equitable title could not be decided in any action in which the United States could not be added as a party.[13] The appellate court further rejected Mr. Donnelly's remaining common law claims, which he had based on constructive trust notions, holding that ANCSA preempted such common law remedies.[14]

The Ninth Circuit decided these issues in 1988.[15] Its opinion left unresolved Eklutna's state law claims against Mr. Donnelly for trespass and ejectment. The district court had retained ancillary jurisdiction over these claims. It eventually granted Eklutna summary judgment and ordered Mr. Donnelly evicted, finding that he was a trespasser and had no basis to challenge Eklutna's patent.

In an unpublished opinion issued in 1991, the Ninth Circuit affirmed the district court's rejection of Mr. Donnelly's state law claims, thereby ending Mr. Donnelly's federal litigation:

> Essentially, [Donnelly] argues that the district court abused its discretion in retaining jurisdiction over the ancillary claims because the absence of an indispensable party precluded [him] from presenting a defense and inevitably led to a judgment against [him]. However, we find no unfairness in that result. The reason the indispensable party (the United States) was absent was that [Donnelly] had permitted the statute of limitations to run as to [his] quiet title claim against that party.

Accordingly, [Donnelly] is in no position to argue that [his] own failure to act in a timely manner somehow prevents the district court from adjudicating Eklutna's counterclaim on the merits.[16]

### B. State Litigation

While the federal case was still in progress, parallel litigation over the same land arose in state court. In 1986 Eklutna sued Mrs. Donnelly and several of the Donnelly children ("the Donnellys") for ejectment, quiet title, and declaratory relief. The case was stayed pending the conclusion of the federal litigation. The superior court lifted the stay after the Ninth Circuit's 1991 decision affirming the federal district court's summary denial of Mr. Donnelly's state law claims. Eklutna then moved for summary judgment in the state case, asserting that the federal rulings were binding on the Donnellys under the doctrine of res judicata. The superior court granted this motion and entered summary judgment for Eklutna. The Donnellys appeal.

## II. DISCUSSION

The Donnellys raise only two arguments on appeal: first, they contend that their ANCSA section 14(c)(1) claims are not barred by res judicata; second, they maintain that these claims have merit. We need address only the res judicata argument, which we find dispositive.

### A. The Previous Federal Litigation Resolved Mr. Donnelly's ANCSA Section 14(c)(1) Claim on the Merits.

The Donnellys argue that res judicata does not bar their claims under section 14(c)(1), because the district court did not reject Mr.

---

10. See id. at 1320–21. 43 U.S.C.A. § 1613(c)(1) (1986 & Supp.1998) provides:
    Upon receipt of a patent or patents:
    (1) the Village Corporation shall first convey to any Native or non-Native occupant, without consideration, title to the surface estate in the tract occupied as of December 18, 1971 ... as a primary place of residence[.]

11. See Donnelly, 850 F.2d at 1320.

12. See id. at 1321.

13. See id.

14. See id.

15. See id. at 1313.

16. United States v. Donnelly, No. A75–027–Civ–JMF, 1991 WL 180080, at *2 (9th Cir. Sept.16, 1991).

Donnelly's section 14(c)(1) claim on its merits. We conclude that it did.

■ The res judicata doctrine recognizes that litigation must eventually come to an end; when a court issues a judgment on the merits of a claim, the doctrine bars the parties and persons in privity with them from relitigating the same claim in a subsequent action.[17] Thus, under the doctrine, a party who presents a claim and has the opportunity to contest it in court may not renew the claim in another court.[18] But "[j]udicial actions must achieve a basic minimum quality to become eligible for res judicata effects. The traditional words used to describe this quality require that there be a judgment that is valid, final, and on the merits."[19] We have explained that

> [t]he claims extinguished by the first judgment include "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction ... out of which the action arose," a mere change in the legal theory asserted as a ground for recovery will not avoid the preclusive effect of the judgment.[20]

In arguing that the federal case did not resolve Mr. Donnelly's section 14(c)(1) claim on the merits, the Donnellys point to the district court and Ninth Circuit opinions, which dismissed Mr. Donnelly's claims against the United States for want of jurisdiction, and dismissed his 14(c)(1) claims against Eklutna for failing to join the United States as an indispensable party. The Donnellys contend that these dismissals were procedural, rather than on the merits. They are only partly correct. Although the federal courts did rely on a procedural flaw as a starting point for their legal analyses, they ultimately concluded that this flaw required them to dismiss Mr. Donnelly's section 14(c)(1) claim on the merits.

■ As we have already mentioned, the district court dismissed Mr. Donnelly's federal quiet title claim because the statute of limitations barred him from naming the United States (whose participation was indispensable) as a party. Based on this procedural violation, the court proceeded to reject Mr. Donnelly's section 14(c)(1) claim. The court found that, as a trespasser on federal land, Mr. Donnelly could not qualify as an occupant for purposes of a section 14(c)(1) conveyance. Then, on the state law claims for ejectment and trespass that Eklutna advanced against Mr. Donnelly, the court granted Eklutna summary judgment, concluding that, as between Eklutna and Mr. Donnelly, Eklutna had the superior claim to title because Mr. Donnelly was a mere trespasser on Eklutna's land.

Having reached this conclusion, the court entered a judgment that unequivocally ordered Mr. Donnelly off the disputed land and unconditionally barred his reentry, thereby resolving—fully, finally, and on the merits— all claims of right to occupancy that Mr. Donnelly had asserted.[21]

The Ninth Circuit later dispelled any lingering doubt that the district court had ruled

---

**17.** See *Drickersen v. Drickersen,* 546 P.2d 162, 169 (Alaska 1976); *Restatement (Second) of Judgments* §§ 19, 21(1) (1982).

**18.** See *DeNardo v. State,* 740 P.2d 453, 455 (Alaska 1987).

**19.** 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4427, at 269 (1981 & Supp. 1998). See *Hooker v. Klein,* 573 F.2d 1360, 1367–68 (9th Cir.1978) (discussing doctrine of res judicata).

**20.** *DeNardo,* 740 P.2d at 455–56 (quoting *State v. Smith,* 720 P.2d 40, 41 (Alaska 1986)).

**21.** The judgment provided, in relevant part:

That Joseph F. Donnelly and his estate are ordered to remove all personal property placed on the Land by either of them, to remove all improvements constructed by either of them from the Land and to restore the Land to a safe, neat and clean condition; ... and That any persons possessing, holding, using, occupying, or otherwise claiming any interest in or right to possess, use, hold or occupy the Land or any portion thereof, which right or interest derives from Joseph F. Donnelly or his estate, are ordered to vacate the premises, to remove all personal property placed on the Land by them, to remove all improvements constructed by them, and to restore the Land to a safe, neat and clean condition; and ... The estate of Joseph F. Donnelly and those claiming any right or interest in the Land deriving from him or his estate, are prohibited from re-entering the Land except for purposes of its restoration. *United States v. Donnelly,* J. No. A 75–27 CI (Alaska Dist.Ct., Jan. 2, 1991).

on the merits. While recognizing that Mr. Donnelly's statute of limitations violation had prevented Mr. Donnelly from litigating his equitable title theory in defending Eklutna's quiet title action, the Ninth Circuit held expressly that because Mr. Donnelly had caused the problem and could no longer remedy it, his claim had properly been rejected on the merits:

> [Donnelly] is in no position to argue that [his] own failure to act in a timely manner somehow prevents the district court from adjudicating Eklutna's counterclaim *on the merits.*[22]

The Ninth Circuit thus unequivocally ruled that the district court had resolved the title dispute between Eklutna and Mr. Donnelly "on the merits." [23]

### B. *For Purposes of Applying Res Judicata, the Donnellys Were in Privity with Mr. Donnelly During the Federal Litigation.*

■ Generally speaking, a judgment that determines an interest in real property will be binding on successors in interest, even if they were not parties to the litigation from which the judgment issued.[24] Mrs. Donnelly acknowledges that she is in privity to the federal judgment insofar as she acquired an interest in Mr. Donnelly's homestead claim as his devisee. But Mrs. Donnelly and other members of the Donnelly family argue that even if the federal judgment adjudicating Mr. Donnelly's section 14(c)(1) claim was a judg-

ment on the merits, it could not bar them from independently asserting their own section 14(c)(1) claims to the same land, since they were not parties to the federal case.

■ Citing *Pennington v. Snow,*[25] Eklutna insists that Mrs. Donnelly was in privity with Mr. Donnelly in the federal litigation. The Donnellys reply that *Pennington* can be distinguished on its facts. We find the arguments of both parties irrelevant, for state law does not govern the res judicata issue in this case; instead, we must look to federal law to determine the preclusive effect of the federal litigation.[26] Otherwise, federal judgments would be subject to the uncertainties of state law wherever a litigant chose to bring a subsequent suit.[27]

■ Under federal law, res judicata "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'"[28] While the general rule is that litigants are not bound by judgments resulting from prior litigation to which they were not parties, the most common exception is that nonparties who are in privity with parties may be bound.[29] Courts will conclude that parties are in privity with one another where the parties are so closely related that it is fair to legally bind both.[30] The relationship between the party and nonparty may be based on succession, nonparty control of the prior litigation, adequate representation in prior litigation, or a unity of interests.[31] But

---

**22.** *United States v. Donnelly,* No. A75–027–Civ–JMF, 1991 WL 180080, at *2 (9th Cir. Sept.16, 1991) (emphasis added).

**23.** *Id.*

**24.** *See, e.g., Restatement (Second) of Judgments* § 43 (1982):
Effect of Judgment Determining Interests in Property on Successors to the Property
A judgment in an action that determines interest in real or personal property:
(1) With respect to the property involved in the action:
(a) Conclusively determines the claims of the parties to the action regarding their interests; and
(b) Has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.
*See also In re Lindsay,* 59 F.3d 942, 952 (9th Cir.1995) (adopting these standards).

**25.** 471 P.2d 370, 375–76 (Alaska 1970).

**26.** *See Shoup v. Bell & Howell Co.,* 872 F.2d 1178, 1179 (4th Cir.1989); 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4466, at 618 (1981 & Supp.1998); *Restatement (Second) of Judgments* § 87 (1982).

**27.** *See Shoup,* 872 F.2d at 1180

**28.** *McClain v. Apodaca,* 793 F.2d 1031, 1033 (9th Cir.1986).

**29.** *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1277 (9th Cir.1992).

**30.** *See id.*

**31.** *See Hart v. Yamaha–Parts Distributors, Inc.,* 787 F.2d 1468, 1472 (11th Cir.1986).

parties are not in privity for res judicata purposes merely because another party makes identical claims against them.[32]

■ Applying these principles, we find ample basis to conclude that the Donnellys were in privity with Mr. Donnelly in the federal litigation. The Donnelly family occupied the disputed land jointly as homesteaders. Though each now asserts an individual claim, the claims all derive from the family's common occupancy and are essentially identical to the section 14(c)(1) claim that Mr. Donnelly advanced in the federal case. The Donnellys knew of Mr. Donnelly's federal litigation, and Mrs. Donnelly actually participated in the case, first as a witness and later as a personal representative of Mr. Donnelly's estate.

Nevertheless, the unity of interests between Mr. Donnelly and the remaining members of his family might, at first blush, seem questionable. Theoretically, at least, the homestead claim that Mr. Donnelly asserted in the federal litigation is adverse to the individual section 14(c)(1) claims that the other members of his family are now asserting, since the two categories of claim are mutually exclusive. Establishing Mr. Donnelly's right to occupy the disputed land as a homesteader would have mooted his own claim of occupancy under section 14(c)(1); by the same token, it would have defeated the section 14(c)(1) claims of remaining family members. But upon closer scrutiny, the potential conflict between Mr. Donnelly and his family proves insubstantial. As we have indicated above, all of the Donnelly family members acquired their interests through Mr. Donnelly's original homestead entry; by all accounts, the Donnellys occupied the land as a family unit. As Mr. Donnelly's devisee, Mrs. Donnelly acknowledges privity to his homestead interests. Moreover, Mr. Donnelly himself did not hesitate to assert his own mutually exclusive homestead and section 14(c)(1) claims simultaneously, as alternative grounds for relief in the federal action. And even though a ruling in Mr. Donnelly's favor on either ground presumably would have foreclosed all other family members from asserting their own section 14(c)(1) claims, no other member of the family attempted to intervene in the federal action or objected to the district court's ejectment order, which on its face plainly extended to the entire family.

In sum, absent record evidence of actual disharmony or conflict, all members of the Donnelly family appear to have had a primary and overarching family interest in the homestead claim that Mr. Donnelly asserted to the disputed land. This unity of interest suffices to establish privity among all family members for purposes of res judicata. Thus, all family members became bound when the federal court rejected Mr. Donnelly's section 14(c)(1) claim on the merits.

### III. CONCLUSION

Res judicata bars the section 14(c)(1) claims of all members of the Donnelly family in this case because the federal court finally and validly decided Mr. Donnelly's identical claim on its merits, and the members of his family are privy to that decision. We therefore AFFIRM the superior court's order granting summary judgment to Eklutna.

---

**32.** *See id.* at 1473; *accord Fabricius v. Freeman,* 466 F.2d 689, 693 (7th Cir.1972) ("Privity is not established by showing that the prior decision involves the same issues of law or fact and will affect the subsequent litigant's rights as judicial precedent.").