*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| UMIALIK INSURANCE CO., | ) | |
| | ) | Supreme Court Nos. S-18461/18701 |
| Petitioner, | ) | (Consolidated) |
| | ) | |
| v. | ) | Superior Court No. 4BE-21-00187 CI |
| | ) | |
| SAFET MIFTARI, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7731 – November 22, 2024 |
| | ) | |
| | ) | |

Petitions for Review from the Superior Court of the State of Alaska, Fourth Judicial District, Bethel, Terrence P. Haas, Judge.

Appearances: Rebecca J. Hozubin and Douglas H. Kossler, Hozubin, Moberly & Associates, Anchorage, for Petitioner. Jason Ringstad and Ken Ringstad, Ringstad Law Office, Fairbanks, and Jim Valcarce, Valcarce Law Office, LLC, Bethel, for Respondent.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

CARNEY, Justice.

## I. INTRODUCTION

After a driver was injured in an accident caused by an uninsured motorist, he filed a claim for coverage under a policy that he had taken out for a different vehicle than the one involved in the accident. The insurer denied the claim, asserting that the

policy excluded uninsured and underinsured motorist (UIM) coverage for vehicles not insured under the same policy.

The driver next sued the uninsured motorist, who defaulted. A jury subsequently awarded the injured driver $1 million in noneconomic damages. The driver then sued the insurer that had denied his claim, seeking to enforce the final judgment from his suit against the uninsured motorist. Both sides filed motions for partial summary judgment. The superior court granted the driver's first motion, holding that the insurer was bound by the prior judgment by res judicata. In the same order, it denied the insurer's motion seeking to prevent the driver from pursuing economic damages. In a separate order, the superior court held that the insurance policy's exclusion of UIM coverage for injuries sustained in any of policy holder's vehicles that were insured under a separate policy was not authorized by Alaska law. The insurer petitioned for review from both orders; we consolidated and granted both petitions.

We hold that Alaska law does not authorize excluding UIM coverage for a vehicle not insured under the same insurance policy under which UIM coverage is sought. We also conclude that res judicata prohibits the parties from relitigating non-economic damages and litigating economic damages against the insurer.

## II. FACTS AND PROCEEDINGS

### A. Facts

Safet Miftari owned two vehicles: a personal car and one he operated as a taxi. He insured the cars with two different insurers; Umialik provided the policy for his personal car. Umialik's insurance policy provided for UIM coverage but excluded such coverage for vehicles not insured under the same policy. It specifically provided:

A. We do not provide Uninsured/Underinsured Motorists Coverage for "property damage" or "bodily injury" sustained by any "insured"[1]:

      1. While "occupying", or when struck by, any motor vehicle owned by you or any "family member", which is not insured for this coverage under the Policy.

In September 2019 Miftari was driving his taxi when he was struck by a vehicle driven by Jerry David.[2] David was uninsured.

In November Miftari filed a UIM claim with Umialik. After receiving the police report, Umialik's adjuster notified Miftari that the report showed that he was driving the taxi, not the personal car that Umialik insured under the policy it had issued him. Miftari responded that the Umialik policy "should afford him . . . underinsured motorist coverage and perhaps med pay."

In December Umialik sent Miftari a letter denying the claim on the grounds that the vehicle he was driving was not the vehicle listed on Umialik's policy and therefore not a "covered auto" under the policy.

In January 2020 Miftari advised Umialik that the insurer for his taxi had tendered its UIM policy limits of $100,000 each to Miftari and his two passengers. Miftari also informed Umialik of his intent to seek coverage under his policy with Umialik. On the same day, Umialik's adjuster responded to Miftari that Umialik's position "remain[ed] unchanged" and directed him to its December 2019 letter. Miftari informed Umialik that he "respectfully disagree[d]" with its position and that he intended to pursue a direct claim against David. Miftari also advised Umialik that he would no longer "serve . . . or provide [Umialik] with any updates or further notice."

---

    [1] The policy defines "insured" to include the policyholder, family members, and any other person occupying the "covered auto." A "covered auto" includes any vehicle listed in the Declarations section of the policy.

    [2] Miftari had two passengers at the time of the accident. David later pled guilty to DUI and third-degree assault in connection with the incident.

Umialik's adjuster requested that Miftari provide it with a courtesy copy of the complaint if he filed suit against Umialik. Miftari responded that he was "not . . . suing Umialik at this juncture but the uninsured driver as a determination of damages."

## B. Proceedings

Later in January 2020 Miftari sued David for damages relating to injuries suffered in the accident as well as other economic and noneconomic damages. In March he provided Umialik a copy of the complaint and wrote that he "wish[ed] that Umiliak [sic] would reconsider." Umialik's adjuster responded on the same day that its position "remain[ed] unchanged." The superior court entered a default against David later that month.

The court held a one-day trial in January 2021 to determine compensatory damages. The jury awarded Miftari and his passengers $1,000,000 each for past and future noneconomic damages. The superior court entered an amended final judgment a few days later in favor of Miftari and his passengers that included attorney's fees, costs, and interest.

In June 2021 Miftari filed suit against Umialik, seeking the policy limit of UIM coverage. Umialik answered and denied that the policy covered the accident involving Miftari's taxi.

Miftari moved for partial summary judgment, arguing that Umialik was bound by the jury's damages verdict returned against David. He argued that res judicata and collateral estoppel prohibited Umialik from relitigating damages. Umialik opposed, arguing that it had not participated in that case and was therefore not bound by the jury's verdict.

Umialik moved for partial summary judgment, arguing that collateral estoppel precluded Miftari from relitigating economic damages and required limiting Miftari's damages to $400,000 under AS 09.17.010's noneconomic damages cap. On the same day Miftari filed a second motion for partial summary judgment, arguing that Umialik's position that his taxi was excluded from UIM coverage because it was

insured under a different policy was contrary to Alaska law. Miftari and Umialik each opposed the other's motions. Umialik also cross-moved for summary judgment that its exclusion of Miftari's taxi was lawful.

The superior court granted Miftari's first motion for partial summary judgment, concluding that Umialik was bound by res judicata. It also denied Umialik's motion for partial summary judgment, holding that collateral estoppel did not bind Miftari to the noneconomic damages cap in AS 09.17.010. But the superior court held that res judicata bound both parties to the damages judgment from the trial against David. It first clarified that although the default entered against David was an "interlocutory order" and the entry of default did not preclude full litigation of the underlying factual issues, a trial had in fact taken place to determine damages. The court therefore held that the jury verdict was a final judgment on the merits.

The superior court also concluded that Umialik was in privity with David. The superior court held that privity requires that a non-party had notice and an opportunity to be heard. But the court noted that Alaska courts had yet to rule on what constitutes sufficient notice in the UIM litigation context. It observed that other states have held that "notifying the insurance company of the action against the motorist and the possibility of a claim under the underinsured motorist coverage" constitutes sufficient notice. The court also noted that a majority of these jurisdictions concluded that an insurer could intervene in a plaintiff's claim against an uninsured tortfeasor. The court concluded that under Alaska Civil Rule 24(b)'s permissive standard for intervention, Umialik could have participated in the damages litigation.

The court also found that Umialik had notice of the action against David and was therefore "on notice that an entry of default was a possibility, as it is in any lawsuit." It found that Umialik had a reasonable opportunity to be heard, and observed that if Umialik had intervened it would have had exclusive control over the litigation because its interests were so closely aligned with David's and he had defaulted. Finally, the court noted that by later filing its own motion for summary judgment regarding

collateral estoppel, Umialik had "ultimately concede[d] that preclusion applies" against it. The court therefore concluded that Umialik was in privity with David.[3]

The superior court held oral argument on the cross-motions for partial summary judgment based on whether Umialik's denial of coverage for Miftari's taxi was authorized under Alaska law. The court ruled on the motions on the record in March 2023. It held that Alaska law did not authorize Umialik's exclusion and resulting denial of coverage, and granted summary judgment to Miftari, while denying Umialik's cross-motion.

The superior court first discussed the applicability of *Hillman v. Nationwide Mutual Fire Insurance Co.*[4] There we held the UIM coverage on one vehicle owned and insured by a policyholder extended to cover damages from an accident involving another vehicle owned by the policy holder, but not insured under the policy or any other policy.[5] We held that UIM coverage is "portable": the statute only requires that "the person injured be insured and that he or she be entitled to recover damages from the operator of the uninsured motor vehicle arising out of the use of the uninsured motor vehicle" for coverage.[6] But the enactment of AS 28.20.445(d)(1) after our decision in *Hillman* imposed a further requirement: that the injured not be "occupying a motor vehicle owned by, but not insured by, the named insured [person] or the insured's spouse or relative residing in the same household."

---

[3]     The superior court rejected Umialik's argument that collateral estoppel bound Miftari to the noneconomic damages cap in AS 09.17.010, reasoning that the cap's applicability was not "actually adjudicated" in the trial against David. *See* AS 09.17.010(b)-(c) (limiting amount of noneconomic damages awarded by court or jury to $400,000 without finding of severe permanent physical impairment or severe disfigurement and limiting amount to $1,000,000 when such findings have been made).

[4]     758 P.2d 1248 (Alaska 1988).

[5]     *Id.* at 1252.

[6]     *Id.*

The superior court concluded that the plain language of AS 28.20.445(d)(1) meant that Umialik's exclusion here was not authorized under Alaska law. It observed that it would be "hard to understand what the significance of portability would be if it were the case that you had to insure both vehicles in order for the uninsured/underinsured motorist policy to follow you." The court concluded that "it seems to be the case, and nobody argues to the contrary, that portability is still a thing." It also considered AS 28.20.445(c), which provides for "stacking" payments where a person "is entitled to uninsured or underinsured motorists coverage under more than one policy providing motor vehicle liability coverage." The court determined that both statutory sections supported its conclusion that UIM insurance "is clearly intended to still follow you around as a pedestrian, as a bicyclist, as a passenger in a vehicle insured by somebody else."

The court accepted Umialik's argument that the legislature's subsequent enactment of AS 28.20.445(d)(1) after *Hillman* changed the landscape of Alaska law, "but not to the degree that [Umialik] would say." Instead, the court held that AS 28.20.445(d)(1) "created . . . a policy against a free ride . . . in those instances where somebody chooses not to insure their other vehicle at all." But as in Miftari's situation, it was "not the case that you're getting a free ride if you choose to insure [a second owned] vehicle but with a different insurer."

The court noted that the legislature might have had policy reasons to allow UIM claims under more than one policy, such as to "allow or even encourage people to . . . spread[] out the risk" or "to ensure that people didn't buy one insurance policy and expect it to cover all of their vehicles which they chose not to insure." It also observed that there was no evidence in the statute or legislative history of an intent "to bar people from using separate insurance on any one of their vehicles and still benefit from the portability of their uninsured/underinsured motorist coverage." As a result, the court concluded that AS 28.20.445(d)(1) had not superseded *Hillman*.

The court specifically found that Miftari's situation was "not the circumstance addressed by the statute," and if the legislature had intended to "supersede portability so far as to completely supersede *Hillman* . . . , then they would have put language like that in the statute." The court instead concluded that the legislature was "trying to . . . ensure that people not fail to insure some of their vehicles while benefiting from the insurance on others."

The superior court held that AS 28.20.445(d)(1) did not apply because the plain language of the statute made clear it applied to vehicles "not insured by the named insured," and that Miftari's taxi was insured by him, just "not covered by the same insurance company." It then held that Umialik's denial of coverage unlawfully restricted coverage below what Alaska law required. The court therefore held that the Umialik insurance policy should be reformed to provide the minimum coverage Alaska law required.

Umialik filed a petition for review of the superior court's order granting partial summary judgment to Miftari and finding that Umialik was bound by the jury's damages verdict. Following the court's order that its exclusion of coverage violated Alaska law, Umialik filed a second petition. We consolidated and granted the petitions.

## III. STANDARD OF REVIEW

"We apply our independent judgment to questions of statutory interpretation, adopting the rule of law that is 'most persuasive in light of precedent, reason, and policy.' "[7] "Whether res judicata applies is a question of law that we review de novo."[8]

---

[7]     *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 719 (Alaska 2013) (quoting *In re Life Ins. Co. of Alaska*, 76 P.3d 366, 368 (Alaska 2003)).

[8]     *Patterson v. Infinity Ins. Co.*, 303 P.3d 493, 497 (Alaska 2013).

## IV. DISCUSSION

### A. Umialik's Exclusion Is Not Authorized By Statute.

Umialik first argues the superior court's order interpreted AS 28.20.445(d)(1)'s and AS 28.22.231(1)'s language "in isolation from the statutory scheme in which it appears."[9]  It argues that UIM coverages are "vehicle- and policy-specific" and that if it must cover vehicles not listed on the policy, "the consumer is receiving coverage for those additional vehicles without having paid for it — i.e., a free ride."  Citing two decisions from other courts, Umialik asserts that the superior court erred and reached "an absurd outcome," rendering the exclusion of other owned vehicles "completely and utterly illusory" when a consumer purchases insurance from another company.[10]

And it argues that the superior court erred by focusing on portability. Because the legislature enacted AS 28.20.445(d)(1) and AS 28.22.231(1) after *Hillman*, Umialik argues that *Hillman* was no longer applicable to a "statutorily authorized other-owned-vehicle exclusion."

### 1. The statutes' plain language does not authorize Umialik's exclusion.

"When determining a statute's meaning, we consider three factors:  the language of the statute, the legislative history, and the legislative purpose behind the

---

**9**  Both statutes exclude coverage for injury, death, or damage to or destruction of property "while occupying a motor vehicle owned by, but not insured by, the named insured."  *See* AS 28.20.445(d)(1); AS 28.22.231(1).

**10**  Umialik cites decisions from the Maryland Court of Special Appeals and Supreme Court of Arkansas in support of its argument.  *See Powell v. State Farm Mut. Auto. Ins. Co.*, 585 A.2d 286, 291 (Md. Spec. App. 1991); *Clampit v. State Farm Mut. Ins. Co.*, 828 S.W.2d 593, 596 (Ark. 1992).

statute."[11]  "The objective of statutory construction is to give effect to the intent of the legislature, with due regard for the meaning that the statutory language conveys to others."[12]  "We give unambiguous statutory language its ordinary and common meaning, but the 'plain meaning' rule is not an exclusionary rule; we will look to legislative history as a guide to construing a statute's words."[13]

We have also "declined to mechanically apply the plain meaning rule when interpreting statutes, adopting instead a sliding scale approach:  'The plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.'  We apply this sliding scale approach even if a statute is facially unambiguous."[14]

Miftari and Umialik disagree over the meaning of two statutes.  Alaska Statute 28.20.445(d)(1) states that "[u]ninsured and underinsured motorists coverage does not apply to bodily injury or death or damage to or destruction of property of an insured . . . while occupying a motor vehicle owned by, but not insured by, the named insured or the insured's spouse or relative residing in the same household."  The second statute, AS 28.22.231(1), uses virtually identical language:  "The uninsured and underinsured motorists coverage required . . . does not apply to bodily injury or death or damage to or destruction of property of an insured . . . while occupying a motor vehicle owned by, but not insured by, the named insured or the insured's spouse or relative residing in the same household."  Both statutes explicitly allow the exclusion

---

[11]  *Alaska Ass'n of Naturopathic Physicians v. State, Dep't of Com., Cmty. & Econ. Dev., Div. Corps., Bus. & Pro. Licensing*, 414 P.3d 630, 634 (Alaska 2018) (internal quotation marks omitted).

[12]  *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 74 (Alaska 2013).

[13]  *Id.*

[14]  *State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 (Alaska 2011) (quoting *Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)).

of UIM coverage if: (1) bodily damage, destruction of property, or death of an insured occurs; (2) that result occurs while the insured is occupying a motor vehicle; (3) that motor vehicle is owned by the insured or the insured's spouse or a relative residing in the same household; and (4) the vehicle is not insured by the named insured, spouse, or said relative.

In *Burton v. State Farm Fire and Casualty Co.* we observed that the language of the predecessor statute to AS 28.22.231(1) clearly implied "that if an insured is occupying an insured vehicle owned by him, he is protected by his underinsured motor vehicle coverage."[15] Neither AS 28.20.445(d)(1) nor AS 28.22.231(1) contains language relating to a vehicle insured under a different insurance policy than the one under which UIM coverage is sought. The language of each statute excludes "a vehicle owned by, but not insured by" the named insured. Nothing in either statute requires that a motor vehicle be insured under the same policy under which UIM coverage is sought for coverage to be available. And given our conclusion in *Hillman* that UIM coverage is portable, such an exclusion is not permitted by the plain language of either statute. Umialik therefore faces a heavy burden to prove that legislative history requires a different result.[16]

### 2. Other provisions of the statutes do not support excluding vehicles insured under a different policy.

A brief outline of the history of UIM coverage in Alaska is necessary. Alaska law originally "fixed the maximum amount of an insurer's liability on any given UIM policy by subtracting from the UIM policy limits any amount paid or payable to

---

[15] 796 P.2d 1361, 1363 (Alaska 1990). The facts in *Burton* differed from Miftari's. Burton was seriously injured while riding as a passenger in his own vehicle and sought UIM coverage under the same policy that the vehicle was insured under. *Id.* at 1362.

[16] *See Alyeska Pipeline Serv. Co.*, 262 P.3d at 597 (quoting *Graham-Gonzalez*, 107 P.3d at 284).

the insured from other sources, including liability coverage."[17] Hence "[b]y subtracting from UIM policy limits all other payments, these provisions rendered UIM coverage superfluous to the extent of coverage under any liability policy."[18] The result was that an injured person could not combine, or "stack," liability and UIM coverages, even when neither coverage alone would fully pay the person's damages.[19]

The 1990 amendments to AS 28.20.445, however, sought to "broaden UIM coverage by substituting an 'excess' approach for the original reduction approach" to "compensate the injured person for actual damages sustained in an accident."[20] In *Progressive Insurance Co. v. Simmons* we recognized the "philosophical shift" in approaches to compensating those injured by underinsured motorists from a "reduction" scheme of UIM coverage to an "excess" or "stacking" approach.[21] And we have since recognized that "[t]he basic public policy behind mandatory uninsured or underinsured motorist schemes . . . is generally to ensure that the insured recovers the damages he or she would have been able to recover if the [un]insured motorist had maintained a (sufficient) policy of liability insurance."[22]

---

[17] *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 514 (Alaska 1998) (describing effect that former AS 28.20.445(a)-(b) (1984) had on UIM coverage).

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] 953 P.2d at 518; *see also id.* at 514-15, 517-19 (describing 1990 amendments to AS 28.20.445(a)-(b) which "marked a basic change" to "excess coverage" which "maximize[s] the potential for full compensation by allowing the purchaser of UIM insurance to supplement available liability payments with UIM payments to the extent necessary to cover all actual damages").

[22] *State Farm Mut. Auto. Ins. Co. v. Wilson*, 199 P.3d 581, 584 (Alaska 2008) (typographical error corrected) (citing 12 COUCH ON INSURANCE § 171:2, at 171-07 (3d ed. 2006)).

Alaska Statute 28.20.445(c) specifically contemplates the stacking of UIM coverage under multiple policies. It lists priorities to determine which motor vehicle policy will pay first to a person "entitled to uninsured or underinsured motorists coverage under more than one policy providing motor vehicle liability coverage."[23]

Umialik argues that this sets up a priority system only if there is UIM coverage, but that the question of whether UIM coverage exists must be answered independently. Alaska Statute 28.20.445(c) subsections (3), (4), (7) and (8) specifically apply to "a policy . . . not covering a motor vehicle occupied by the injured person but covering the injured person," either as a "named insured," as "an insured other than as a named insured." Subsections (7) and (8) specifically apply to a policy that covers the injured person "as excess, umbrella, or similar insurance."[24] If UIM coverage depended on the occupancy of the very motor vehicle insured under the policy under which UIM coverage is sought, there would be few if any situations where subsections (c)(3), (4), (7), and (8) could take effect.[25] For AS 28.20.445(c)'s list of priorities to have any meaningful application, the statutory scheme cannot authorize the exclusion for which Umialik advocates.

---

[23]  AS 28.20.445(c). *But see Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1254-55 (Alaska 1988) (holding policy's exclusion of stacking coverages for multiple vehicles under same policy was valid because policy was "clear in limiting coverage to the highest limit applicable to any of the insured vehicles" and "no windfall" exists for insurer since separate premiums bought protection for non-relatives); *Lindfors v. State Farm Mut. Auto. Ins. Co.*, 562 F. Supp. 3d 5, 9 (D. Alaska 2021) (concluding AS 28.20.445(c) and AS 28.22.221 "permit . . . anti-stacking provisions . . . if there is 'no circularity in language' and [policies] are 'clear in limiting coverage to the highest limit applicable to any of the insured vehicles' ").

[24]  AS 28.20.445(c)(7), (8).

[25]  Under Umialik's interpretation of AS 28.20.445(d)(1) and 28.22.231(1), AS 28.20.445(c) subsections (3), (4), (7), and (8) could only take effect where insurance policies themselves lacked an other-owned-vehicle exclusion.

Alaska Statutes 21.96.020, 28.22.101, and 28.20.440 also suggest the legislature intended to require UIM coverage where a vehicle is insured under an insurance policy other than the policy under which UIM coverage is sought.

Alaska Statute 21.96.020(c) requires an insurance company offering automobile liability insurance to "offer coverage prescribed in AS 28.20.440 and 28.20.445 or AS 28.22 for the protection of the persons insured under the policy who are legally entitled to recover damages for bodily injury or death from owners or operators of uninsured or underinsured motor vehicles." Similarly, AS 28.22.101(e) requires that a motor vehicle liability policy "must provide coverage under AS 28.22.201-28.22.231 . . . for the protection of the persons insured under the policy who are legally entitled to recover damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury or death, or damage to or destruction of property arising out of the ownership, maintenance, or use of the uninsured or underinsured motor vehicle." And AS 28.20.440(b) requires that an automobile insurance policy "contain coverage . . . for the protection of the persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury or death, or damage to or destruction of property arising out of the ownership, maintenance or use of the uninsured or underinsured motor vehicle."[26]

We have recognized that dictionaries "provide a useful starting point" for determining common meanings.[27] Merriam-Webster defines "protect" as "to cover or

---

[26] AS 28.20.440(b)(3). The statute also requires that UIM coverage "comply with the provisions of AS 28.20.445." *Id.*

[27] *See Alaska Ass'n of Naturopathic Physicians v. State, Dep't of Com., Cmty. & Econ. Dev., Div. Corps., Bus. & Pro. Licensing*, 414 P.3d 630, 635 (Alaska 2018).

shield from exposure, injury, damage, or destruction."[28]  Alaska Statutes 21.96.020, 28.22.101(e), and 28.20.440 therefore aim to broadly shield from injury insureds who legally ought to recover damages from operators of uninsured or underinsured motor vehicles.

In *Hillman*, we interpreted AS 28.20.440 as it was written in 1983.[29]  At the time, AS 28.20.440(b) required that "[t]he owner's policy of liability insurance shall . . . contain coverage . . . for the protection of the persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury or death arising out of the ownership, maintenance or use of the uninsured motor vehicle."[30]

While AS 28.20.440(b)(3) was amended in 1985, it remains largely identical to the former AS 28.20.440(b)(3) we interpreted in *Hillman*, and the former AS 28.20.440(b) largely resembles AS 21.96.020(c) and AS 28.22.101(e).[31]  The amendment provides no reason to depart from our interpretation of AS 28.20.440(b) in *Hillman* that "all that [AS 28.20.440(b)] requires is that the person injured be insured and that he or she be entitled to recover damages from the operator of the uninsured [or

---

[28]    *Protect*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/protect (last visited Sept. 10, 2024).

[29]    758 P.2d 1248, 1251 (Alaska 1988).

[30]    Former AS 28.20.440(b) (1983); *see also Hillman*, 758 P.2d at 1251-52.

[31]    The former AS 28.20.440(b)(3) is almost identical to the current version of AS 28.20.440(b)(3) and notably differs only in the following ways:  the former version provides only for protection of insureds entitled to recover damages from owners and operators of uninsured motor vehicles while the current version protects recovery from both uninsured and underinsured motor vehicle owners and operators; the former version only protected insureds who suffered bodily injury or death while the current version protects insured who suffered both bodily injury or death and damage to or destruction of property.  *See* AS 28.20.440(b); Ch. 70, § 11, SLA 1984 (amending AS 28.20.440(b)); *Hillman*, 758 P.2d at 1251 (providing former version of AS 28.20.440(b)).

underinsured] motor vehicle arising out of the use of the uninsured [or underinsured] motor vehicle."[32] This interpretation accords with the use of the word "protects," which implies that AS 28.20.440(b), AS 21.96.020(c), and AS 28.22.101(e) shield from injury insureds who are legally entitled to recover damages from operators of uninsured or underinsured motor vehicles.

Alaska Statute 28.20.440(b)(3) also requires that UIM coverage "comply with the provisions of AS 28.20.445." Similarly, AS 28.22.101(e) specifies that policies "must provide coverage under AS 28.22.201-28.22.231." And AS 28.20.445(d) and 28.22.231 create specific carveouts from the broad statutory command to "protect" or shield from injury insureds who are legally entitled to recover damages from an owner or operator of an uninsured or underinsured motor vehicle. Those exceptions are that the insured cannot be occupying a vehicle owned by but not insured by the named insured or the insured's spouse or relative residing in the same household, and that the insured cannot have been struck by a vehicle owned by the named insured or the insured's spouse or relative residing in the same household.

Taken together, AS 28.20.440(b), AS 21.96.020(c), and AS 28.22.101(e) suggest that the legislature aimed to broadly protect insureds who are legally entitled to recover from uninsured or underinsured motor vehicle operators except under the two circumstances specified above. They do not suggest the legislature intended to authorize exclusions from UIM coverage where an insured vehicle was not insured under the same policy under which UIM coverage is sought.

### 3. The statutes do not clearly support Umialik's proposed legislative policies.

Umialik argues that other-owned-vehicle exclusions remove the incentive "to insure only one vehicle and thereby obtain uninsured or underinsured motorist

---

[32] *Hillman*, 758 P.2d at 1251.

coverage on multiple household vehicles." In support it relies on a section analysis prepared for an earlier version of the bill that eventually became AS 28.20.445(d)(1).[33]

The section analysis for what became AS 28.20.445(d)(1) states that the section "[c]larifies that UM/UIM coverage does not apply in situations where the alleged un/underinsured vehicle is owned by a name [sic] insured or resident relative but not insured" and "is designed to prevent a person from owning several vehicles but only insuring one."[34] This is consistent with AS 28.20.445(d)(1)'s plain language, which states that UIM coverage does not apply to injury of an insured "while occupying a motor vehicle owned by, but not insured by, the named insured or the insured's spouse or relative residing in the same household." The plain language of AS 28.20.445(d)(1) does not require that a vehicle be insured under the same policy under which UIM coverage is sought. The legislative history Umialik cites does not support its argument that the legislature intended to exclude UIM coverage where a vehicle is not insured under the same policy.

### 4. No legislative policy is clear from the statutes.

Umialik argues that legislative policy decisions support its interpretation of AS 28.20.445(d)(1) and AS 28.22.231(1). It argues that exclusions like the one in Miftari's policy advance three purposes: (1) allowing the insurer to accurately calculate premium rates; (2) addressing the "free ride" issue, i.e., the ability of an insured to collect UIM benefits from the use of vehicle that is not insured under the policy; and (3) removing an incentive to insure only one vehicle but obtain UIM coverage on multiple household vehicles.

---

[33] A section analysis is a summary of a proposed bill describing what each section of the bill is intended to achieve.

[34] Conference Committee, Section Analysis Compromise for HB 7, 13th Leg., 2d Sess. at 2 (Apr. 30, 1984).

Miftari argues that the superior court's interpretation of AS 28.20.445(d)(1) and AS 28.22.231(1) promotes the policy of protecting individuals entitled to recover damages from operators and owners of uninsured and underinsured motor vehicles. And he asserts that there are good policy reasons the legislature may have wanted individuals to recover from multiple insurers: to spread the risk among multiple insurers and to promote competition and enable consumers to find the best deals.

It is unclear to us which policies the legislature sought to promote. If anything, the plain language of AS 28.20.440(b)(3) and AS 28.22.101(e), which uses the phrase "for the protection of the persons insured under the policy," supports Miftari's argument of protecting insured individuals to the maximum level possible. And while it is possible that the legislature was concerned with premium rates, no legislative history supports Umialik's argument that it was.[35] Nor is it clear that the legislature sought to protect insurance companies from a "free ride."

We recognized in *Hillman* that "[t]he purpose of [what was formerly AS 28.20.440(b)(3)] is to protect [individuals] completely . . . , from all harm, whatever their status — passenger, driver, pedestrian — at the time of injury, produced by uninsured [and underinsured] motorists," as long as the individual is insured and legally entitled to recover.[36] We described UIM coverage as "personal and portable" in

---

[35]    On the other hand, when the legislature passed the Tort Reform Act in 1986, it specifically acted on its "primar[y] concern[] with avoiding increases in malpractice insurance rates" in interpreting statutes authorizing medical malpractice actions. *Doan v. Banner Health Inc.*, 535 P.3d 537, 547-49 (Alaska 2023); *see also* Ch. 139, §§ 1-11, SLA 1986 (Tort Reform Act); *Smith v. Ingersoll-Rand Co.*, 14 P.3d 990, 994 (Alaska 2000) ("[T]he Tort Reform Act was intended . . . to create a more equitable distribution of the cost and risk of injury and increase the availability and affordability of insurance." (internal quotation marks omitted)).

[36]    *Hillman*, 758 P.2d at 1252 (quoting *Elledge v. Warren*, 263 So. 2d 912, 918-19 (La. App. 1972)).

*Hillman*.[37]  And as we observed above, the current version of AS 28.20.440(b)(3) is virtually identical to the version it superseded.  The statute's language suggests the legislature intended to promote the portability of insurance.  Although this is inconclusive, it does favor Miftari's argument that the statute does not authorize excluding UIM coverage for a vehicle that is insured under an insurance policy other than the policy under which UIM coverage is sought.

The plain language of AS 28.20.445(d)(1) and AS 28.22.231(1), other related statutory provisions, and the legislative history of AS 28.20.445(d)(1) suggest that the legislature did not authorize excluding UIM coverage where a vehicle is not insured under the very insurance policy under which UIM coverage is sought.  Taken together, we conclude that AS 28.20.445(d)(1) and AS 28.22.231(1) do not authorize an other-owned-insured vehicle exclusion.  The superior court did not err in concluding that Umialik's exclusion of coverage for Miftari was not authorized.

## B.  Res Judicata Precludes Umialik From Relitigating Miftari's Noneconomic Damages.

The superior court correctly determined that res judicata precludes Umialik from relitigating the issue of Miftari's noneconomic damages.

A judgment is given res judicata effect when it is:  "(1) a final judgment on the merits; (2) from a court of competent jurisdiction; (3) in a dispute between the same parties (or their privies) about the same cause of action."[38]  "[W]hether the cause of action is the same does not rest on the legal theory asserted but rather on whether the claims arise out of the same transaction — the same set of underlying facts."[39]

---

[37]  *Id.* (quoting *Bradley v. Mid-Century Ins. Co.,* 294 N.W.2d 141, 152 (Mich. 1980)).

[38]  *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010) (citing *Smith v. CSK Auto, Inc.*, 132 P.3d 818, 820 (Alaska 2006)).

[39]  *Id.* (citing *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 141 (Alaska 2004)).

Umialik does not dispute that the judgment against David is from a court of competent jurisdiction. But Umialik argues that it is not bound by the judgment against David because Miftari failed to provide it fair notice. It argues that because Miftari did not send Umialik a copy of his motion for entry of default against David when he sent it a copy of his complaint, Miftari did not give it fair notice so that it could intervene. Umialik also argues that the jury verdict and amended final judgment pursuant to it do not constitute a judgment on the merits. And it asserts that "public policy mandates that the incorrect verdict cannot stand," because the $1,000,000 verdict exceeds the statutory cap for noneconomic damages without a specific finding of severe permanent physical impairment or severe disfigurement that the statute requires for a verdict in excess of the cap.[40] It also argues in its reply brief that it had no interests in the proceedings and was neither a party nor in privity with David because it did not have "an opportunity to participate in the case with 'significant and unhampered control.' "

But Umialik was in privity with David because it had adequate notice and an opportunity to be heard. Privity exists where "the non-party (1) substantially participated in the control of a party's presentation in the adjudication or had an opportunity to do so; (2) agreed to be bound by the adjudication between the parties; or (3) was represented by a party in a capacity such as trustee, agent, or executor."[41] It is "a shorthand way of expressing assurance that the non-party has had adequate notice and opportunity to be heard, and that its rights and interests have been protected."[42]

---

[40]     *See* AS 09.17.010(b)-(c).

[41]     *Stewart v. Elliott*, 239 P.3d 1236, 1241 (Alaska 2010) (quoting *Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 298 (Alaska 2000)).

[42]     *Id.* (quoting *Alaska Foods, Inc. v. Nichio Gyogyo Kaisha, Ltd.*, 768 P.2d 117, 121 (Alaska 1989)).

Privity "assures that it is fair to legally bind the non-party to the actions of the party in the earlier action."[43]

Umialik relies on *Powers v. United Services Automobile Ass'n* to argue that it was not in privity with David.[44] In *Powers* an injured plaintiff successfully arbitrated an uninsured motorist claim against a primary carrier and sought to preclude a secondary carrier from further arbitration.[45] Powers was injured in a car accident involving an uninsured driver.[46] Powers was a passenger in a car insured by a State Farm policy that included UIM coverage.[47] Powers had separate UIM coverage with United Services Automobile Association (USAA), which was obligated to pay damages exceeding those covered by State Farm.[48] An arbitration clause in each policy allowed either party to the insurance contract to demand arbitration.[49] Powers demanded arbitration with State Farm but not with USAA.[50] Powers sent USAA's local representative a letter informing it of his demand for arbitration with State Farm.[51] After an arbitration award granted damages and costs to Powers, he demanded that USAA pay the excess up to the coverage limit.[52] USAA responded that it was not bound by the State Farm arbitration and it requested Powers's medical records for an

---

[43]     *Id.* (citing *Donnelly v. Eklutna, Inc.*, 973 P.2d 87, 92 (Alaska 1999)).

[44]     6 P.3d 294 (Alaska 2000).

[45]     *Id.* at 295.

[46]     *Id.*

[47]     *Id.*

[48]     *Id.* at 295-96.

[49]     *Id.* at 296.

[50]     *Id.*

[51]     *Id.*

[52]     *Id.*

independent evaluation.[53]  USAA eventually disputed the amount of damages claimed and sought a separate arbitration.[54]

We held that USAA was not bound by the first arbitration because it was not in privity with State Farm.[55]  We concluded that USAA did not participate in or control State Farm's presentation in the arbitration, lacked a relationship with State Farm, and that State Farm and USAA's interests were not identical even if they were similar.[56]  We focused on the fact that USAA had no liability until State Farm's policy limit was exceeded, and therefore had no interest in defending an amount under $100,000, while State Farm had no interest in defending against any amount over $100,000.[57]  Because the two insurers had different interests, we concluded USAA was not in privity with State Farm and could not be bound by the prior judgment.[58]

But we have not addressed whether an insurer is in privity with an underinsured or uninsured motorist and is therefore bound by an earlier judgment against that uninsured or underinsured motorist.  Courts across the country, however, have concluded that an insurer is in privity with an uninsured or underinsured motorist for purposes of preclusion so long as the insurer has notice and an opportunity to intervene in litigation against the uninsured or underinsured motorist.[59]

---

[53]    *Id.*

[54]    *Id.* at 296-97.

[55]    *Id.* at 297.

[56]    *Id.* at 298.

[57]    *Id.*

[58]    *Id.*

[59]    *See, e.g.*, *Sutch v. State Farm Mut. Auto. Ins. Co.*, 672 A.2d 17, 21 (Del. 1995) (holding insurer is bound if it had notice of tort suit against underinsured or uninsured motorist and opportunity to intervene); *Nationwide Mut. Ins. Co. v. Webb*, 436 A.2d 465, 472 (Md. App. 1981) ("[I]f the insurer had notice of the tort suit and an

In *Lenzi v. Redland Insurance Co.* the Supreme Court of Washington noted the multiple policy issues at play in a UIM case.[60] From the insurer's perspective, "there is concern about collusion between its insured and the tortfeasor, who may be judgment proof and have no real interest in the outcome of an arbitration or trial, leading to an artificially high award for the insured the carrier must pay."[61] From the insured's perspective, "the insured should not have to relitigate a case depending on" whether the outcome of litigation is "a small award" — in which case the insurer "may decide simply to pay its insured" — or a high award — in which case the insurer "may decide to force its insured to relitigate in the hope of obtaining a more favorable result."[62] The court held that the rule of requiring "timely notice of litigation between the insured and the tortfeasor" "straightforwardly resolves all of these concerns."[63]

---

opportunity to intervene but failed to seek intervention, then the insurer will be bound by the determination in the tort suit regarding the insured's entitlement to damages from the uninsured motorist and the amount of those damages."); *State ex rel. Shelton v. Mummert*, 879 S.W.2d 525, 528 (Mo. 1994) ("If notice is given and [the insurer] chooses not to intervene, it will be bound by the resulting judgment as to liability and damages."); *Lenzi v. Redland Ins. Co.*, 996 P.2d 603, 606 (Wash. 2000) ("Our UIM jurisprudence has clearly indicated an insurer having notice of a lawsuit brought by its insured against the uninsured tortfeasor may be bound by the judgment obtained by the insured."); *Bailey v. Progressive Specialty Ins. Co.*, 72 So. 3d 587, 593 (Ala. 2011) (same); *Clemer v. Hartford Ins. Co.*, 587 P.2d 1098, 1108 (Cal. 1978) (same); *Briggs v. Am. Fam. Mut. Ins. Co.*, 833 P.2d 859, 864 (Colo. App. 1992) (same); *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 450 (Fla. 2005) (same); *Gerdesmeier v. Sutherland*, 690 N.W.2d 126, 129-30 (Minn. 2004) (same); *Dominici v. State Farm Mut. Auto. Ins. Co.*, 390 P.2d 806, 810 (Mont. 1964) (same); *Heisner v. Jones*, 169 N.W.2d 606, 612 (Neb. 1969) (same); *Allstate Ins. Co. v. Pietrosh*, 454 P.2d 106, 111 (Nev. 1969) (same); *Zirger v. Gen. Accident Ins. Co.*, 676 A.2d 1065, 1073 (N.J. 1996) (same).

[60]    *Lenzi*, 996 P.2d at 606.

[61]    *Id.*

[62]    *Id.*

[63]    *Id.* at 607.

We are persuaded by the reasoning in *Lenzi*. We agree with the courts across the country that have concluded that when an insurer has adequate notice and an opportunity to intervene in underlying litigation between an insured and an underinsured or uninsured motorist, the insurer is in privity with the underinsured or uninsured motorist. By having notice of and the opportunity to participate in the underlying litigation, an insurer can prevent collusion between the insured and the underinsured or uninsured motorist by defending against an insured's claims. And an insured no longer has to worry about the insurer having two bites at the apple by waiting to see if the underlying litigation against the underinsured or uninsured motorist succeeds or fails. Requiring that an insurer has notice and an opportunity to intervene "assures that it is fair to legally bind the [insurer] to the actions of the [underinsured or uninsured motorist] in the earlier action."[64]

### 1. Umialik had adequate notice.

Adequate notice requires nothing more than "timely notifying [the insurer] of the filing of the summons and complaint."[65] In January 2020 Miftari provided timely notice to Umialik that he intended to pursue a direct claim against the uninsured motorist "as a determination of damages." And Miftari provided Umialik a copy of his complaint against the uninsured motorist in March 2020. Umialik had adequate notice.

---

[64] *See Stewart v. Elliott*, 239 P.3d 1236, 1241 (Alaska 2010) (citing *Donnelly v. Eklutna, Inc.*, 973 P.2d 87, 92 (Alaska 1999)).

[65] *Lenzi*, 996 P.2d at 607; *see also, e.g.*, *Nationwide Mut. Ins. Co. v. Webb*, 436 A.2d 465, 470, 478 (Md. App. 1981) (concluding that sufficient notice existed when counsel informed insurer by letter that default judgment would be sought against uninsured and then enforced against insurer if insurer did not intervene and enclosed copies of "suit papers"); *Briggs v. Am. Fam. Mut. Ins. Co.*, 833 P.2d 859, 860, 864 (Colo. App. 1992) (holding that informing insurer of separate tort action against uninsured motorist was sufficient notice).

### 2. Umialik had an opportunity to intervene in the litigation against David.

Umialik also had an opportunity to intervene. Alaska Civil Rule 24(b) allows an applicant to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common." The amount of Miftari's damages was a common question for both David and Umialik. Civil Rule 24(b) gives a court the discretion to consider whether intervention would "unduly delay or prejudice" adjudication; it would have been more prejudicial to deny intervention and require Miftari to relitigate the same issues already litigated.

Umialik could have substantially controlled the defense had it intervened. It shared identical interests with David because AS 28.20.440(b)(3) and AS 28.22.101(e) specifically condition a UIM insurer's liability on the underinsured or uninsured motorist's liability to the insured.[66] Umialik was thus liable *if* and *only if* David was liable to Miftari; their interests were therefore aligned in denying David's liability to Miftari. Unlike in *Powers* where the different interests of the two insurers compelled us to conclude that no privity existed between them,[67] here David and Umialik had aligned interests in defending against David's liability to Miftari. In addition, because David failed to participate, Umialik would have had sole control of the defense if it had intervened.

Umialik had the opportunity to intervene in and substantially participate in the damages litigation to vindicate its interests but failed to do so. The superior court correctly held that it was in privity with David.

---

[66] *See* AS 28.20.440(b)(3) (requiring motor vehicle liability insurance policy to contain coverage "for the protection of the persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles"); AS 28.22.101(e) (same).

[67] *Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 296-98 (Alaska 2000).

### 3. The amended final judgment was a "final judgment on the merits."

A final judgment on the merits "does not require a full trial on the merits,"[68] and "may be based upon a prior dismissal on the merits of [the] plaintiff's action against [the] defendant."[69] The United States Supreme Court has held that a final decision "generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[70] A dismissal with prejudice also qualifies as a final judgment on the merits.[71]

The jury verdict decided the damages that David owed Miftari. Nothing else was left for the court to do once the jury reached its verdict but to issue and execute a judgment. The amended final judgment incorporating the jury verdict was a final judgment on the merits for purposes of res judicata.

Because the amended final judgment was a final judgment on the merits and Umialik was in privity with David, Umialik cannot relitigate the award of noneconomic damages to Miftari.[72]

---

[68] *Smith v. CSK Auto, Inc.*, 132 P.3d 818, 820 (Alaska 2006) (citing *DeNardo v. Calista Corp.*, 111 P.3d 326, 329 (Alaska 2005)).

[69] *Id.* (quoting *Shepherd v. Bering Sea Originals*, 578 P.2d 587, 589 (Alaska 1978)).

[70] *Caitlin v. United States*, 324 U.S. 229, 233 (1945) (citing *St. Louis I.M. & S. Ry. Co. v. S. Express Co.*, 108 U.S. 24, 28 (1883)).

[71] *Smith*, 132 P.3d at 820 (citing *Tolstrup v. Miller*, 726 P.2d 1304, 1307 (Alaska 1986)).

[72] Umialik's argument about exceeding the statutory damages cap necessarily fails for the same reason.

**C.    Res Judicata Also Precludes Miftari From Seeking Economic Damages.**

Umialik argues that Miftari is precluded from litigating economic damages because Miftari waived it in his jury trial against David and did not request that the jury make an award of economic damages.

Just as Umialik is bound by the judgment entered against David, so too is Miftari. Res judicata not only bars claims actually brought and litigated but also claims that could have been brought arising from "the same transactions as those in the first suit."[73] While Miftari's complaint originally sought economic damages, Miftari's proposed verdict form did not request such an award. As a result, the jury did not decide any and the final amended judgment therefore did not award Miftari economic damages. By failing to request them, Miftari waived his right to seek economic damages and is barred from doing so in this action against Umialik.

## V.    CONCLUSION

We AFFIRM the superior court's orders on summary judgment.

---

[73]    *Id.* at 820-21.